**Judge McMahon**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

      – v. –                       :       <u>INDICTMENT</u>

JAMES CAHILL,                       :       20 Cr.
CHRISTOPHER KRAFT,
PATRICK HILL,                       :
MATTHEW NORTON,
WILLIAM BRIAN WANGERMAN,            :       **20 CRIM 521**
KEVIN MCCARRON
JEREMY SHEERAN,                     :
      a/k/a "Max,"
ANDREW MCKEON,                      :
ROBERT EGAN,
SCOTT ROCHE, and                    :
ARTHUR GIPSON,
                                    :
           Defendants.
                                    :

- - - - - - - - - - - - - - - x

<u>COUNT ONE</u>
**(Racketeering Conspiracy)**

The Grand Jury charges:

<u>The Enterprise</u>

1.   At all times relevant to this Indictment, JAMES CAHILL,

CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON, WILLIAM BRIAN

WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a "Max," ANDREW

MCKEON, and ROBERT EGAN, the defendants, and others known and

unknown, were members of an enterprise (the "Enterprise") comprised

of current and former officials of Local 638 of the Enterprise

Association of Steamfitters ("Local 638").  The Enterprise was a

criminal organization whose members agreed to engage in, among

other activities, honest services fraud, receipts of bribes as

labor union officials, and unlawful receipt of employer payments to labor organization officials.  Since at least in or around October 2018, defendant-members of the Enterprise conspired to receive dozens of payments totaling over $100,000, for which the defendants agreed to betray their unions' trust by taking actions favorable to non-union employers and exercising corrupt influence on the conduct of labor-management relations in the construction trades.

2.   The Enterprise constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4)—that is, a group of individuals associated in fact.  This Enterprise was engaged in, and its activities affected, interstate and foreign commerce.  The Enterprise, which was based in New York City and Long Island, operated in the Southern District of New York and elsewhere, and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

3.   Local 638, of which members of the Enterprise are current and former officials, is a union with jurisdiction over pipe fitting in New York City, including all five boroughs, and all of Long Island.  Local 638 is affiliated with (i) the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States, Canada (the "United Association"), which represents approximately 355,000 plumbers,

pipefitters, sprinkler fitters, service technicians, and welders in local unions across North America, and (ii) the New York State Building and Construction Trades Council (the "Trades Council"), which represents over 200,000 unionized construction workers in New York State.

4.    The affairs of Local 638 are carried out by union officials, including business agents, who are assigned to manage certain geographical areas and who are responsible for the day-to-day management of the union's interactions with contractors, and business agents at large, who oversee other business agents.  As part of their responsibilities, Local 638 business agents are expected to work to ensure that contracts are awarded to employers who employ members of Local 638.

## The Racketeering Defendants

5.    At all times relevant to this Indictment, JAMES CAHILL, CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON, WILLIAM BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a "Max," ANDREW MCKEON, and ROBERT EGAN, the defendants, were members of the Enterprise who participated in the operation and management of the Enterprise and held the following positions within organized labor:

a.    CAHILL was, at times relevant to this Indictment, the President of the Trades Council, a member of the Executive Council for the New York State American Federation of Labor and

3

Congress of Industrial Organizations, a former Business Agent of Local 638, and a former international representative of New York State for the United Association.   CAHILL was the leader of the Enterprise.

　　　b.   KRAFT was, at times relevant to this Indictment, a Local 638 Business Agent with a geographical area of midtown Manhattan, New York.

　　　c.   HILL was, at times relevant to this Indictment, a Local 638 Business Agent with a geographical area of Nassau County, New York.

　　　d.   NORTON was, at times relevant to this Indictment, a Local 638 Business Agent with a geographical area of Queens, New York.

　　　e.   WANGERMAN was, at times relevant to this Indictment, a Local 638 Business Agent with a geographical area of Brooklyn and Staten Island, New York.

　　　f.   MCCARRON was, at times relevant to this Indictment, a Local 638 Business Agent with a geographical area of Western Suffolk County, New York.

　　　g.   SHEERAN was, at times relevant to this Indictment, a Local 638 Business Agent with a geographical area that included sections of Manhattan, New York.

4

h.   MCKEON was, at times relevant to this Indictment, a Local 638 Business Agent with a geographical area of Queens, New York.

i.   EGAN was, at times relevant to this Indictment, the Financial Secretary-Treasurer of Local 638.

## Purposes of the Enterprise

6.   The purposes of the Enterprise included the following:

a.   Using Enterprise members' positions of power with respect to Local 638 to receive bribes in exchange for taking actions favorable to non-union employers, and exercise corrupt influence on the conduct of labor-management relations within the construction trades, all to the detriment of Local 638 and the union members' interests.

b.   Promoting and enhancing the Enterprise and the activities of the Enterprise's members.

c.   Enriching the Enterprise's members through, among other things, honest services fraud and the receipt of bribes.

## Means and Methods of the Enterprise

7.   Among the means and methods employed by the Enterprise's members in conducting and participating in the conduct of the affairs of the Enterprise were the following:

a.   Members of the Enterprise committed, conspired, and attempted to commit acts of honest services fraud and the

solicitation and receipt of cash bribes to enrich the Enterprise and its members and to the detriment of the members of Local 638.

b.   Members of the Enterprise committed, conspired, and attempted to commit acts of honest services fraud and the solicitation and receipt of bribes in the form of "loans" that were never repaid, free meals and drinks, free labor on personal property, and purchases of home appliances including garbage disposal and ice machines, all to enrich the Enterprise and its members and to the detriment of the members of Local 638.

c.   As the leader of the Enterprise, CAHILL directed the decision-making of officials within the union who are under his control, expanded the Enterprise, and initiated more of Local 638's officials into the Enterprise in order to accept bribes and expand their influence.

d.   Members of the Enterprise exerted control over the composition of Local 638's leadership, including by influencing union elections and installing loyal associates into official positions within Local 638.

### The Racketeering Conspiracy

8.   From at least in or about October 2018, up to and including the present, in the Southern District of New York and elsewhere, JAMES CAHILL, CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON, WILLIAM BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN,

6

a/k/a "Max," ANDREW MCKEON, and ROBERT EGAN, the defendants, and others known and unknown, being persons employed by and associated with the Enterprise described in Paragraphs One through Seven of this Indictment, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, through a pattern of racketeering activity consisting of:

     a.   multiple acts indictable under Title 18, United States Code, Sections 1343, 1346, and 2 (honest services wire fraud and aiding and abetting the same);

     b.   multiple acts involving bribery, chargeable under New York Penal Law Sections 180.25 (bribe receiving by a labor official); 110.00 (attempt to commit a crime); and 20.00 (accessory liability); and

     c.   multiple acts indictable under Title 29, United States Code, Section 186 and Title 18, United States Code, Section 2 (dealing with restrictions on payments and loans to labor organizations and aiding and abetting the same).

9.    It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

<u>Overt Acts</u>

10.   In furtherance of the conspiracy and to effect the illegal object thereof, JAMES CAHILL, CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON, WILLIAM BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a "Max," ANDREW MCKEON, and ROBERT EGAN, the defendants, and other known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about October 22, 2018, JAMES CAHILL, the defendant, received a $3,000 bribe from a non-union employer in the plumbing business ("Employer-1") and introduced Employer-1 to CHRISTOPHER KRAFT, the defendant, as an official within Local 638 who Employer-1 could bribe in exchange for protection and assistance from Local 638 officials.  CAHILL told Employer-1, in sum and substance, "Best thing you can do is . . . get a rabbi. Other than me, that's why I want him to be the rabbi."

b.    On or about November 14, 2018, ROBERT EGAN, the defendant, and CAHILL each received a $3,000 bribe from Employer-1 at a restaurant in Queens, New York.  During an intercepted phone

call the day before, and in advance of the November 14 meeting, Employer-1 asked CAHILL, in sum and substance, "You got Egan?" to which CAHILL responded, in sum and substance, "Egan's lined up."

      c.    On or about December 18, 2018, during an intercepted phone call, CAHILL invited PATRICK HILL, the defendant, to meet with Employer-1 and told him, in sum and substance, "put that on your calendar and you'll meet him. But don't tell anybody you're meeting him. Keep that quiet, you know." HILL responded, in sum and substance, "No, no, absolutely not . . . Between you and me." The next day, CAHILL and HILL met with Employer-1 and each accepted a $2,500 bribe. At the meeting, CAHILL told HILL, in sum and substance, "Here's why I want you to meet [Employer-1]—he just met [KRAFT] recently too. In Nassau, you leave [Employer-1] alone." After receiving the bribe, HILL told Employer-1, in sum and substance, "We'll be fine to you." Following the meeting, CAHILL told HILL during an intercepted phone call, in sum and substance, "welcome to the real world."

      d.    On or about May 16, 2019, WILLIAM BRIAN WANGERMAN, the defendant, received a $2,000 bribe from Employer-1 during a meeting that was also attended by CAHILL and HILL. During the meeting, CAHILL asked WANGERMAN, in sum and substance, "do you have anything to toss [Employer-1]'s way," to which WANGERMAN responded, in sum and substance, "Got a couple of things that, uh, you know

that whole area, unfortunately the freaking Jews bought all of East
New York." Later in the meeting, Employer-1 stated, in sum and
substance, "Yeah, listen. We. . . Brian already talked, so he's
gonna--we're gonna get back on the train."

    e.   On or about June 14, 2019, MATTHEW NORTON, the
defendant, received a $2,000 bribe from Employer-1 in exchange for
not objecting to Employer-1 bidding on construction projects in
NORTON's territory. At the same meeting, CAHILL and HILL also
received $2,000 bribes from Employer-1. NORTON told Employer-1
during the meeting, in sum and substance, "Business is business. .
. . The real world is the real world and there's . . . always
wiggle room as long as everyone . . . understands each other, and
everyone's taken care of," and that NORTON needed to know in
advance when Employer-1 was bidding "so that I don't have egg on my
face like a fucking idiot."

    f.   On or about August 30, 2019, KEVIN MCCARRON, the
defendant, received a $1,500 bribe from Employer-1. During the
meeting, Employer-1 said to MCCARRON, in sum and substance, "Help
me get jobs and we'll . . . work out, and we'll make some money,"
to which MCCARRON responded, "Oh, absolutely." MCCARRON also
explained to Employer-1 the nature of his relationship with CAHILL,
stating, in sum and substance, "What I love about Jimmy—what I

fucking love about Jimmy, and I say this to everybody.  He takes care of his friends."

        g.   On or about September 19, 2019, ANDREW MCKEON, the defendant, received a $1,500 bribe from Employer-1.  At the same meeting, KRAFT and HILL also received $1,500 bribes from Employer-1.  Prior to paying the bribe to MCKEON, Employer-1 discussed with MCKEON, in substance and in part, at least one job that Employer-1 had in MCKEON's geographic area.  Employer-1 expressed a desire to develop a "give and take" relationship with MCKEON such that MCKEON would not "hammer [Employer-1] in the ass," and MCKEON agreed they would figure things out on a "job-by-job" basis.

        h.   On or about October 21, 2019, CAHILL told Employer-1, in sum and substance, "Here's the thing.  I give you Paddy [HILL].  But if Paddy fucks up and does stupid things, you have to tell me . . . I got my guys, I got the guys who come to me, and you know that, and everyone knows who comes to me."  CAHILL further told Employer-1, in sum and substance, that "with Paddy Hill, I did everything to get him elected."  During the same meeting, CAHILL encouraged Employer-1, in sum and substance, not to sign with a union, but instead to "tell everyone to go fuck themselves" because "if you become union, you'll have 12 fucking guys on your back."  CAHILL further advised Employer-1, in sum and substance, to "go forward.  Do not stop.  There's nobody who can stop you.  The only

person who can stop you is you yourself."  In sum and substance, CAHILL assured Employee-1 of his assistance and explained that Employee-1 should "fuck everybody as much as you want.  You want everybody to hate you because when they hate you, they're going to come for you.  Paddy's the same way.  Kraft's the same way.  You don't need Kraft.  Be nice to him.  Say hello."  CAHILL also told Employer-1, in sum and substance, to tell CAHILL what Employer-1 wanted from certain union officials who are "all petrified.  I don't know the reason why they're so petrified.  I never gave them a reason to be petrified . . . . But didn't they shit their pants when you told them you're friends with me?"

     i.    On or about November 12, 2019, HILL and JEREMY SHEERAN, a/k/a "Max," the defendant, met with Employer-1 and each accepted a $1,500 bribe.  During the meeting, SHEERAN discussed getting CAHILL's approval to meet with Employer-1 and stated, in sum and substance, "Jimmy's telling me a lot  . . . Pat [HILL] already told, Pat told me to . . . the first thing I said is, you clear this with Jimmy?"

     j.    On or about May 15, 2020, CAHILL provided Employer-1 with a photograph of an ice machine from an appliance supplier and told Employer-1, in sum and substance, "Take this with you in case you fucking forget.  I'm waiting two fucking summers," a reference

to CAHILL's longstanding demand that Employer-1 purchase and
install an ice machine in CAHILL's home.

(Title 18, United States Code, Section 1962(d).)

## COUNT TWO
### (Honest Services Fraud Conspiracy)

The Grand Jury further charges:

11.  The allegations contained in paragraphs 1 through 7 and
10 of this Indictment are repeated and re-alleged as if fully set
forth herein.

12.  Local Union 200 of the United Association of Journeyman
and Apprentices of the Plumbing and Pipe Fitting Industry of the
United States and Canada ("Local 200") is a union with jurisdiction
over all plumbing work on Long Island, New York.  Local 200 is
affiliated with the United Association, which as alleged above,
represents approximately 355,000 plumbers, pipefitters, sprinkler
fitters, service technicians, and welders in local unions across
North America.

13.  ARTHUR GIPSON, the defendant, was at times relevant to
this Indictment, a Local 200 Business Agent with a geographical
area that included all of Long Island.

14.  SCOTT ROCHE, the defendant, was at times relevant to this
Indictment, a Local 638 Business Agent at Large.

15.  From at least in or about October 2018 through the
present, in the Southern District of New York and elsewhere, JAMES

13

CAHILL, CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON, WILLIAM BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a "Max," ANDREW MCKEON, ROBERT EGAN, SCOTT ROCHE, and ARTHUR GIPSON, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Sections 1343 and 1346.

16.   It was a part and an object of the conspiracy that JAMES CAHILL, CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON, WILLIAM BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a "Max," ANDREW MCKEON, ROBERT EGAN, SCOTT ROCHE, and ARTHUR GIPSON, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to (a) deprive the members of Local 638 of their intangible right to (i) KRAFT, HILL, NORTON, WANGERMAN, MCCARRON, SHEERAN, MCKEON, EGAN, and ROCHE's honest services as officials of Local 638, and (ii) CAHILL's honest services as an official of the Trades Council, and (b) deprive the members of Local 200 of their intangible right to (i) GIPSON's honest services as an official of Local 200, and (ii) CAHILL's honest services as an official of the Trades Council, would and did transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, writings, signs, signals,

14

pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, CAHILL, KRAFT, HILL, NORTON, WANGERMAN, MCCARRON, SHEERAN, MCKEON, EGAN, ROCHE, and GIPSON agreed to accept bribes from Employer-1 in exchange for CAHILL, KRAFT, HILL, NORTON, WANGERMAN, MCCARRON, SHEERAN, MCKEON, EGAN, ROCHE, and GIPSON (i) acquiescing in Employer-1's bidding and performing construction work with non-union labor for projects that would otherwise have potentially been awarded to companies whose employees were represented by Local 638 and/or Local 200, and (ii) allowing Employer-1 to falsely hold himself out as using union labor to builders in order to obtain plumbing subcontracts, all to the detriment of Local 638's and/or Local 200's members.

(Title 18, United States Code, Sections 1343, 1346, and 1349.)

## COUNT THREE
### (Conspiracy to Violate the Taft-Hartley Act)

The Grand Jury further charges:

17.   The allegations contained in paragraphs 1 through 7, 10, and 12 through 14 of this Indictment are repeated and re-alleged as if fully set forth herein.

18.   From at least in or about October 2018 through the present, in the Southern District of New York and elsewhere, JAMES CAHILL, CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON, WILLIAM BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a "Max,"

15

ANDREW MCKEON, ROBERT EGAN, SCOTT ROCHE, and ARTHUR GIPSON, the

defendants, and others known and unknown, willfully and knowingly

did combine, conspire, confederate, and agree together and with

each other to commit an offense against the United States, to wit,

to violate Title 29, United States Code, Section 186.

19.  It was a part and an object of the conspiracy that JAMES

CAHILL, CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON, WILLIAM

BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a "Max,"

ANDREW MCKEON, ROBERT EGAN, SCOTT ROCHE, and ARTHUR GIPSON, the

defendants, as officers and employees of labor organizations, would

and did unlawfully and willfully request, demand, receive and

accept, and agree to receive and accept any payment, loan, and

delivery of money and other things of value exceeding $1,000 in

value from Employer-1, a person acting in the interest of an

employer whose employees were employed in an industry affecting

commerce and whose employees such labor organizations represented,

sought to represent and would have admitted to membership, in

violation of Title 29, United States Code, Sections 186(a)(2),

(b)(1) and (d)(2).

20.  It was also a part and an object of the conspiracy that

JAMES CAHILL, CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON,

WILLIAM BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a

"Max," ANDREW MCKEON, ROBERT EGAN, SCOTT ROCHE, and ARTHUR GIPSON,

the defendants, as officers and employees of labor organizations engaged in an industry affecting commerce, would and did unlawfully request, demand, receive and accept, and agree to receive and accept the payment, loan, and delivery of money and other things of value exceeding $1,000 in value from Employer-1, a person acting in the interest of an employer, which money and other things of value would·be paid, lent, and delivered, and agreed to be paid, lent, and delivered to the defendants with the intent to influence their actions, decisions and duties as such officers and employees of their respective labor organizations in violation of Title 29, United States Code, Sections 186(a)(4),(b)(1) and (d)(2).

21.   In furtherance of the conspiracy, JAMES CAHILL, CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON, WILLIAM BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a "Max," ANDREW MCKEON, ROBERT EGAN, SCOTT ROCHE, and ARTHUR GIPSON, the defendants, agreed to receive such cash payments and other things of value in exchange for, among other things, CAHILL, KRAFT, HILL, NORTON, WANGERMAN, MCCARRON, SHEERAN, MCKEON, EGAN, ROCHE, and GIPSON (i) acquiescing in Employer-1's bidding and performing construction work with non-union labor for projects that would otherwise have potentially been awarded to companies whose employees were represented by Local 638 and/or Local 200, and (ii) allowing Employer-1 to falsely hold himself out as using union

17

labor to builders in order to obtain plumbing and steamfitting subcontracts, all to the detriment of Local 638's and Local 200's members.

### Overt Acts

22.  In furtherance of the conspiracy and to effect the illegal objects thereof, JAMES CAHILL, CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON, WILLIAM BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a "Max," ANDREW MCKEON, ROBERT EGAN, SCOTT ROCHE, and ARTHUR GIPSON, the defendants, and other known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.  On or about March 13, 2020, CAHILL received a $3,000 bribe from Employer-1 at a restaurant in Harrison, New York.

b.  On or about March 1, 2019, KRAFT received a $3,000 bribe from Employer-1 at a restaurant in Long Beach, New York, during which meeting CAHILL and HILL also each received a $3,000 bribe from Employer-1.

c.  On or about May 15, 2020, HILL received a $1,000 bribe from Employer-1 at a cafe in Palisades, New York, during which meeting CAHILL also received a $2,500 bribe from Employer-1.

d.  On or about June 14, 2019, NORTON received a $2,000 bribe from Employer-1 at a restaurant in Long Beach, New York,

during which meeting HILL and KRAFT also each received a $2,000 bribe from Employer-1.

      e.   On or about May 23, 2019, WANGERMAN and MCCARRON each received a $2,000 bribe from Employer-1 at a restaurant in Melville, Long Island.

      f.   On or about November 12, 2019, SHEERAN and HILL each received a $1,500 bribe from Employer-1 at a restaurant in Melville, Long Island.

      g.   On or about September 19, 2019, MCKEON, KRAFT, and HILL each received a $1,500 bribe from Employer-1 at a restaurant in Melville, Long Island.

      h.   On or about January 13, 2020, ROCHE and CAHILL each received a $2,500 bribe from Employer-1 at a restaurant in Corona, Queens.

      i.   On or about May 10, 2019, EGAN received a $2,000 bribe from Employer-1 at a restaurant in Rockville Centre, New York, during which meeting CAHILL and HILL received bribes of $3,000 and $2,000, respectively, from Employer-1.

      j.   On or about August 19, 2020, GIPSON received a $1,000 bribe from Employer-1 at a restaurant in Commack, New York, during which meeting CAHILL and HILL received bribes of $2,000 and $1,000, respectively, from Employer-1.

      (Title 18, United States Code, Section 371.)

## FORFEITURE ALLEGATION AS TO COUNT ONE

23.  As a result of committing the offense alleged in Count One of this Indictment, JAMES CAHILL, CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON, WILLIAM BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a "Max," ANDREW MCKEON, and ROBERT EGAN, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963, any and all interests the defendants acquired and maintained in violation of Title 18, United States Code, Section 1962; any and all interests in, securities of, claims against, and property and contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and any and all property constituting and derived from proceeds obtained, directly and indirectly, from the racketeering activity alleged in Count One of this Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendants personally obtained.

## FORFEITURE ALLEGATION AS TO COUNT TWO

24.  As a result of committing the offense alleged in Count Two of this Indictment, JAMES CAHILL, CHRISTOPHER KRAFT, PATRICK

HILL, MATTHEW NORTON, WILLIAM BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a "Max," ANDREW MCKEON, ROBERT EGAN, SCOTT ROCHE, and ARTHUR GIPSON, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

## FORFEITURE ALLEGATION AS TO COUNT THREE

25.   As a result of committing the offense alleged in Count Three of this Indictment, JAMES CAHILL, CHRISTOPHER KRAFT, PATRICK HILL, MATTHEW NORTON, WILLIAM BRIAN WANGERMAN, KEVIN MCCARRON, JEREMY SHEERAN, a/k/a "Max," ANDREW MCKEON, ROBERT EGAN, SCOTT ROCHE, and ARTHUR GIPSON, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

21

## Substitute Assets Provision

26.   If any of the above described forfeitable property, as a result of any act or omission of the defendants:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third person;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United

States Code, Section  1963(m), Title 21, United States Code,

Section  853(p), and Title 28, United States Code, Section 2461(c),

to seek forfeiture of any other property of the defendants up to

the value of the above forfeitable property.

            (Title 18, United States Code, Sections 981 and 1963;
              Title 21, United States Code, Section 853; and
              Title 28, United States Code, Section 2461.)

FOREPERSON

ILAN T. GRAFF LSP
Attorney for the United States
Acting Under Authority Conferred
by 28 U.S.C. § 515

Form No. USA-33s-274 (Ed. 9-25-58).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JAMES CAHILL,
CHRISTOPHER KRAFT,
PATRICK HILL,
MATTHEW NORTON,
WILLIAM BRIAN WANGERMAN,
KEVIN MCCARRON,
JEREMY SHEERAN, a/k/a "Max,"
ANDREW MCKEON,
ROBERT EGAN,
SCOTT ROCHE, and
ARTHUR GIPSON,
Defendants.

INDICTMENT

20 Cr. ___ (  )

(Title 18, United States Code,
Sections 371, 1343, 1346, 1349,
and 1962).

ILAN T. GRAFF
Attorney for the United States
Acting Under Authority Conferred
by 28 U.S.C. § 515

A TRUE BILL

_____
                            Foreperson.