1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                          20 cr 521 (CM)

5   JAMES CAHILL, et al.,

6            Defendants.
                                         Conference
7   ------------------------------x

8                                        New York, N.Y.
                                         October 29, 2020
9                                        12:00 p.m.

10  Before:

11

12                   HON. COLLEEN MCMAHON,

13                                       Chief Judge

14                        APPEARANCES

15  AUDREY STRAUSS
         Acting United States Attorney for the
16       Southern District of New York
    BY:  JASON M. SWERGOLD
17       DANIELLE R. SASSOON
         JUN XIANG
18       LAURA DE OLIVEIRA
         Assistant United States Attorneys

19  TALKIN, MUCCIGROSSO & ROBERTS
         Attorneys for Defendant Cahill
20  BY:  SANFORD N. TALKIN

21  SAPONE & PETRILLO, LLP
         Attorneys for Defendant Kraft
22  BY:  EDWARD VINCENT SAPONE

23  EBANKS LAW FIRM, PLLC
         Attorneys for Defendant Defendant Hill
24  BY:  Alberto A. Ebanks

25

```
1                    APPEARANCES (Cont'd)

2  JAMES R. FROCCARO, JR.
        Attorney for Defendant Norton
3
   FRANKFURT KURNIT KLEIN & SELZ P.C.
4        Attorneys for Defendant Wangerman
   BY:  BRIAN EDWARD MAAS
5        TYLER MAULSBY

6  CAMILLE MARIE ABATE
        Attorney for Defendant McCarron
7
   MEISTER SEELIG & FEIN LLP
8        Attorneys for Defendant Sheeran
   BY:  EVAN LOREN LIPTON
9
   STEVE ZISSOU & ASSOCIATES
10       Attorneys for Defendant McKeon
   BY:  STEVE ZISSOU
11
   SERCARZ & RIOPELLE, LLP
12       Attorneys for Defendant Egan
   BY:  ROLAND GUSTAF RIOPELLE
13
   ABRAMSON & MORAK
14       Attorneys for Defendant Roche
   BY:  GLENN HOWARD MORAK
15       ALAN MICHAEL ABRAMSON

16  DOAR, RIECK, KALEY & MACK
        Attorneys for Defendant Gipson
17  BY:  JOHN FRANCIS KALEY

18

19

20

21

22

23

24

25
```

```
 1                    (Case called)

 2                    THE DEPUTY CLERK:  For Defendant James Cahill,

 3      appearance.

 4                    MR. TALKIN:  Good afternoon, your Honor.  Sam Talkin

 5      for Mr. Cahill who is in my office social distancing from me

 6      over my left shoulder.  We have discussed the details of a

 7      video appearance today, and he has consented to it proceeding

 8      as a video.

 9                    THE COURT:  Thank you, Mr. Talkin.

10                    THE DEPUTY CLERK:  For Christopher Kraft.

11                    MR. SAPONE:  Good afternoon, your Honor.  Edward

12      Sapone for Mr. Kraft who dialed in and who also consents.

13                    THE COURT:  Thank you, Mr. Sapone.

14                    MR. SAPONE:  You're welcome.

15                    THE DEPUTY CLERK:  For Defendant Patrick Hill.

16                    MR. EBANKS:  Albert Ebanks, your Honor, on behalf of

17      Patrick Hill.  Good afternoon, your Honor.  My client is

18      listening in and consents to proceeding via video.

19                    THE COURT:  Thank you, Mr. Ebanks.

20                    THE DEPUTY CLERK:  Matthew Norton.

21                    MR. FROCCARO:  Good afternoon, your Honor.  James

22      Froccaro for Mr. Norton.  He's seated behind me, your Honor,

23      and he consents to proceeding by video for this conference.

24                    THE COURT:  Thank you, Mr. Froccaro.

25                    THE DEPUTY CLERK:  William Wangerman.
```

 1              MR. MAAS:  Brian Maas and Tyler Maulsby for

 2     Mr. Wangerman.  We're substituting in today, your Honor, for

 3     Jill Shellow who previously appeared for him.  Mr. Wangerman is

 4     on the line and consents to proceeding by video.

 5              THE COURT:  Thanks, Mr. Maas.

 6              THE DEPUTY CLERK:  Kevin McCarron.

 7              MS. ABATE:  Good morning, your Honor.  This is Camille

 8     Abate representing Kevin McCarron.  Mr. McCarron is also on the

 9     line, and he does consent to appearing this way.

10              THE COURT:  Thank you, Ms. Abate.

11              THE DEPUTY CLERK:  Jeremy Sheeran.

12              MR. LIPTON:  Evan Lipton on behalf of Jeremy Sheeran

13     who is appearing by telephone and consents to proceed remotely.

14              THE COURT:  Thank you.

15              THE DEPUTY CLERK:  Andrew McKeon.

16              MR. ZISSOU:  Steve Zissou appears for Mr. McKeon.

17     Your Honor, Mr. McKeon is on the phone.  He's called in

18     separately.  He consents to proceeding in the manner in which

19     the Court has established the conference for today.

20              THE COURT:  Thank you, Mr. Zissou.

21              THE DEPUTY CLERK:  Robert Egan.

22              MR. RIOPELLE:  Roland Riopelle for Robert Egan.

23     Mr. Egan is here with me in my office today, and we consent to

24     proceed by video, your Honor.

25              THE COURT:  Thank you, Mr. Riopelle.

 1                THE DEPUTY CLERK:  Scott Roche.

 2                MR. MORAK:  Good afternoon, your Honor.  Glenn Morak

 3     and Alan Abramson for Scott Roche.  Mr. Roche has dialed in,

 4     and he of course consents to proceeding by video.

 5                THE COURT:  Thank you.

 6                THE DEPUTY CLERK:  And Arthur Gipson.

 7                MR. KALEY:  Good afternoon, your Honor.  John Kaley

 8     for Mr. Gipson.  Mr. Gipson is present with me in my office,

 9     and he consents to this proceeding by video.

10                THE COURT:  Thank you, Mr. Kaley.

11                THE DEPUTY CLERK:  For the government.

12                MR. SWERGOLD:  Good afternoon, your Honor.  For the

13     government, Assistant United states Attorneys Jason Swergold,

14     Danielle Sassoon, and Jun Xiang, and special Assistant United

15     States Attorney Laura De Oliveira.

16                THE COURT:  Thank you, all.

17                I want to start by apologizing for last week.  It was

18     a mess.  And I do very much apologize.  If I hadn't cut it off,

19     none of it would have been recorded for posterity.

20                As it turns out, the court reporter could not hear a

21     single word of what was going on over the traffic noise, the

22     back chatter, and the other problems.  So I made the right

23     call.  I may have made it in a ^moment of peek, but I made the

24     right call.

25                This is probably the second appearance on the

1    indictment I believe because there was an arraignment in mag

2    court; is that correct?

3            MR. SWERGOLD:  Yes.

4            THE COURT:  We have a new Federal Rule of Criminal

5    Procedure, thanks to Congress, which has decided that it should

6    start drafting rules of procedures, since it has nothing better

7    to do.

8            So I am today orally and subsequent to this proceeding

9    in writing entering pursuant to Rule 5(f) of the Federal Rules

10   of Criminal Procedure the following order:

11           The government must disclose to the defense all

12   information "favorable to an accused" that is, "material either

13   to guilt or to punishment" and that is known to the government.

14           This obligation applies regardless of whether the

15   information would itself constitute admissible evidence.  The

16   government shall make good-faith efforts to disclose such

17   information to the defense as soon as reasonably possible after

18   its existence becomes known to the government, so as to enable

19   the defense to make effective use of the information in the

20   preparation of its case.

21           This obligation applies regardless of whether the

22   information would itself constitute admissible evidence.

23           The's government shall disclose such information to

24   the defense promptly after its existence becomes known to the

25   government so that the defense may make effective use of the

1    information in the preparation of the case.

2         As part of these obligations, the government must

3    disclose any information that can be used to impeach the trial

4    testimony of a government witness within the meaning of *Giglio*

5    *v. United States*, 405 U.S. 150 (1972), and its progeny.

6         Such information must be disclosed sufficiently in

7    advance of the trial in order for the defendant to make

8    effective use of it at trial or at such other time as the Court

9    may order.  The foregoing obligations are continuing and apply

10   to materials that become known to the government in the future.

11        Additionally, as information is otherwise subject to

12   disclosure, it must be disclosed regardless of whether the

13   government credits it.

14        In the event the government believes that disclosure

15   under this order would compromise witness safety, victim

16   rights, national security, a sensitive law enforcement

17   technique, or any other substantial government interest, it may

18   apply to the Court for a modification of its obligation, which

19   may include in-camera review or withholding or subjecting to a

20   protective order or a part of the information otherwise subject

21   to disclosure.

22        For purposes of this order, the word "government"

23   includes all, current, or former federal, state, and local

24   prosecutors, law enforcement officers, and other officers who

25   have participated in the prosecution or investigation that led

1   to this prosecution of the offense or offenses with which the

2   defendants are charged.  The government has an affirmative

3   obligation to seek from such sources all information subject to

4   disclosure under this order.

5        If the government fails to comply with this order, the

6   Court, in addition to ordering production of the information,

7   may:

8        One, specify the terms and conditions of such

9   production;

10        Two, grant a continuance;

11        Three, impose evidentiary sanctions;

12        Four, impose sanctions on any responsible lawyer for

13   the government;

14        Five, dismiss charges before trial or vacate a

15   conviction after trial or a guilty plea;

16        Or, Six, enter any other order that is just under the

17   circumstances.

18        Mr. Swergold, do you acknowledge having heard

19   everything I just said?

20        MR. SWERGOLD:  Yes, your Honor.  I do.

21        THE COURT:  I would like every other member of your

22   team to acknowledge that he has heard or she has heard what

23   I've just said.

24        MR. XIANG:  Yes, your Honor.  This is Jun Xiang for

25   the government, and I concur.

1          MS. SASSOON:  This is Danielle Sassoon for the

2     government, and I acknowledge.

3          MS. OLIVEIRA:  Your Honor, this is Special AUSA Laura

4     De Oliveira, and I also acknowledge.

5          THE COURT:  Oaky.  Well, this will be entered in

6     writing at the conclusion of this proceeding.  That's our new

7     procedure, folks, to be done in this district at the first

8     appearance on an indictment or an information.  We'll be

9     entering back orders in a lot of cases.

10          Okay.  Who is going to talk for the government?

11          MR. SWERGOLD:  This is Jason Swergold.  I will, your

12     Honor.

13          THE COURT:  Mr. Swergold, just tell me what this is

14     about.

15          MR. SWERGOLD:  Your Honor, so I'll give you a quick

16     procedural history of the case and then the background of the

17     charges, and then I can discuss the discovery in this case.

18          An indictment was returned on October 1.  Defendant

19     James Cahill was arrested the evening before, on September 30.

20     The rest of the defendants were arrested the morning of

21     October 1, and everybody was presented and arraigned on that

22     date.

23          The charges in this indictment arise from a multi-year

24     investigation into union corruption, an investigation that

25     involved wiretaps, recorded bribes, searches, surveillance, and

1   focused on official at two unions, Steamfitters Local 638 and

2   Plumbers Local 200.

3         The defendants were current and former officials at

4   these unions who agreed with each other to accept bribes and

5   betray their union's trust by taking actions favorable to

6   nonunion employers.

7         The majority of these defendants were business agents.

8   Those are union officials who were assigned to manage certain

9   geographical areas for their union, and they're responsible for

10  the day-to-day management of their union's interactions with

11  contractors in those areas.  As part of their responsibilities,

12  they're expected to work to ensure that contracts are awarded

13  to employers who employ members of their union.

14        Now, the charge in this case include a RICO conspiracy

15  against nine of the defendants, an honest services wire fraud

16  conspiracy against all 11 of the defendants, and a Taft-Hartley

17  conspiracy against all 11 of the defendants.

18        At the center of the RICO conspiracy, your Honor,

19  charged in Count One is James Cahill, at the time the president

20  of the New York State Building & Construction Trades Council.

21        So your Honor understands, the Trades Council

22  represents over 200 unionized construction workers in New York

23  state, including steamfitters from Local 638 and plumbers from

24  Local 200.

25        That made him one of the most powerful labor officials

1    in the state.  And he used that position, your Honor, to bring

2    other members, other defendants, into this enterprise.  He

3    exercised considerable influence over the affairs of the

4    enterprise, which we've defined as these current and former

5    officials of Local 638.

6              And these members of the RICO enterprise, instead of

7    looking out for the interests of their unions, they committed

8    honest services fraud, Taft-Hartley violations, and state

9    bribery offenses.

10             And the indictment sets forth just some examples of

11   the recorded conversations these defendants had in which they

12   explicitly discussed the actions that they would take in

13   exchange for (inaudible).

14             In one meeting, Mr. Cahill instructed a nonunion

15   employer not to sign with the union, despite the fact that

16   Mr. Cahill's job was to represent the interests of hundreds of

17   thousands of union workers.

18             Defendant Patrick Hill told a nonunion employer that

19   Local 638, of which he was a business agent, wouldn't make

20   trouble for that nonunion employer in Hill's geographic

21   territory.

22             More than one of the defendants referred to receiving

23   bribes as "the real world and a place where there is wiggle

24   room, so long as everybody gets taken care of," meaning

25   everybody's bribed.

1            So that's an overview of the charges, your Honor.  If

2     your Honor would like, I can now discuss what discovery would

3     look like in this case or answer any specific questions about

4     the nature of this case.

5            THE COURT:  Let's talk about discovery.

6            MR. SWERGOLD:  Thank you, your Honor.

7            So as your Honor is aware, the parties had negotiated

8     a protective order which we submitted and your Honor has now

9     signed.  We've also been collecting hard drives from all of the

10    defendants to load the discovery, and we have it from almost

11    all of them.

12           There is a substantial amount of discovery in this

13    case, both electronic materials, hard-copy materials that are

14    being digitized and scanned.  And we've been working to

15    organize all of those files for purposes of discovery.  And we

16    are currently finalizing stamping and will begin burning today

17    for the defendants who have already sent up the drives.

18           The major categories of discovery, your Honor, are

19    wiretap recordings and associated data and reports and

20    paperwork for those wiretaps.  There were wiretaps on three of

21    the defendants in this case.  And then there are some other

22    wiretaps for non-charged individuals that had captured some of

23    the defendants.  We'll be making a production of that as well.

24           There are many dozen consensual recordings, audio and

25    video, with accompanying surveillance photographs, prerecorded

 1    bribe money, law enforcement reports.

 2            We also have draft transcripts of many of the

 3    meetings.  And pursuant to a stipulation that we've entered

 4    into with the defendants, we will be producing draft

 5    transcripts for many of these meetings to assist the defendants

 6    in working through that discovery.

 7            There is also a significant amount of phone records,

 8    call detail records, pen register data, bank and financial

 9    records, cell site GPS warrants, an automobile tracking

10    warrant, email and iCloud search warrants, and searches from

11    one dozen phones seized on the day of the takedown.

12            The initial production is going to consistent of what

13    I think is the most important discovery for purposes of the

14    defendants getting a handle on the charges against them, which

15    would be the video and audio recordings of the meetings that

16    the defendants are captured on, as well as the photo

17    surveillance and the draft transcripts.

18            For all of the phones that we've been able to unlock

19    to date, we will also be producing the forensic images of those

20    phones to the particular defendants.

21            In the next round of discovery, we're going to

22    prioritize the warrant application, the wiretaps, phone

23    records, bank records, and additional law enforcement reports.

24    Our current estimate is that we will be able to complete the

25    vast majority of all Rule 16 discovery within approximately 60

1   days.

2        There are just a few areas that I want to flag for

3   your Honor and defense counsel regarding that 60-day period.

4   The first is electronically stored information.

5        With respect to some of the cell phones, we've had to

6   send them out because they were locked and we need a vendor to

7   try to unlock them.  We will obviously review and produce them

8   expeditiously when we receive them back from the vendor.  We

9   have undertaken and continue to undertake responsiveness

10  reviews on electronically stored information and will be making

11  those productions on a rolling basis.

12       And then finally, we have been receiving and will

13  likely continue to receive responses from entities that we have

14  subpoenaed.  And we will of course continue to produce the

15  material that we receive in response to the subpoenas on a

16  rolling basis.  So that of course could end up being past the

17  60-day time period as various entities comply with our

18  subpoenas.

19       THE COURT:  Okay.  Who is going to speak for the

20  defendants?

21       MR. TALKIN:  Your Honor, this is Sam Talkin.  I guess

22  I can, since Mr. Cahill is listed first on the indictment.

23       I think that obviously we would ask for 90 days to

24  come back so that we can get the discovery, analyze it, and

25  then we can come back and probably give your Honor a better

1   picture about what motions we would file.

2           We would coordinate -- for example, Title III we would

3   coordinate so you don't get 11 Title III suppression motions.

4           THE COURT:  I would really appreciate that.

5           MR. TALKIN:  We'll get that done for you, your Honor.

6   And then other motions that have overlapping interests, we will

7   work on that.  So I think if you give us 90 days, we can put

8   our heads together both with our clients and the lawyers and

9   give your Honor an idea of where we're headed.  That's

10  assuming, obviously, we get the meaty discovery within that

11  60-day period.

12          THE COURT:  Does anybody have an objection to that

13  from the defense perspective?

14          MR. EBANKS:  This is Al Ebanks, your Honor.  I

15  represent Patrick Hill.  I don't have an objection.  I think

16  that 90 days sounds like the right amount of time minimally, I

17  would say, your Honor, just so that we can really get a handle

18  on the discovery.

19          So assuming we receive it any time soon, I'm hoping

20  that 90 days sounds right to the Court, your Honor.  It sounds

21  like we should be able to wrap our head around this by then.

22          MR. TALKIN:  Your Honor, if 90 days -- if it becomes

23  clear that it's not enough, we'll obviously file a letter with

24  the Court.

25          THE COURT:  Ninety days doesn't sound like a problem

1    to me.  So when is 90 does from now?  The 28th/29th of January.

2          Mr. O'Neill?

3          THE DEPUTY CLERK:  We'll assume that we'll be in

4    person on that date?

5          THE COURT:  We'll assume that we'll discuss that as

6    the date draws closer.

7          THE DEPUTY CLERK:  So the 28th at 4:00.

8          MS. ABATE:  Your Honor, this is Camille Abate for

9    Kevin McCarron.  I just want to apprise the Court that I have a

10   suppression hearing in front of Judge Rakoff on January 27

11   which may go more than one day.  I don't know if you want to do

12   it a little bit before or a little bit after, but I want to

13   make sure I'm able to appear on the next date of this case.

14         THE COURT:  I think Judge Rakoff will let you go at

15   the end of the second day of the suppression hearing.

16         MR. SAPONE:  Your Honor, this is Ed Sapone for

17   Mr. Kraft.  Nice to see your Honor.

18         THE COURT:  What are you going to do to screw this up?

19         MR. SAPONE:  Absolutely nothing.  I certainly wouldn't

20   screw anything up in this courtroom.  But I'm going to be on

21   trial the whole month of January, and I'll have someone cover,

22   with the Court's permission.  I'll make that application when

23   we get closer.

24         THE COURT:  That's fine.

25         MR. SAPONE:  Thank you.

1          THE COURT:  So let's put it on for 4:00 on the 28th

2    and give Ms. Abate two full days.  Judge Rakoff doesn't tend to

3    go -- these days anyway, he doesn't tend to go beyond 4:00.

4          And time is excluded in the interests of justice.  The

5    defendants' interest in a speedy trial is outweighed by the

6    need for them to get their hands on what sounds like quite

7    voluminous discovery, start making their way through it, and to

8    put together a plan of action which they are in no position to

9    make now.

10          I should put on the record that under the Cares Act,

11    that it is the opinion of this Court that in view of the rising

12    number of cases in New York, that it is necessary and advisable

13    for us to hold proceedings, wherever possible, remotely by

14    video, as this proceeding has been, or by audio.  Some people

15    are on an audio.

16          And I hereby make all the findings necessary to be

17    made under the Cares Act to authorize the holding of this

18    proceeding in this remote manner.  The defendants have all

19    consented orally on the record, and written consents will be

20    submitted if they have not already been submitted.

21          Okay?

22          MR. TALKIN:  Yes, your Honor.

23          MS. ABATE:  Thank you, your Honor.

24          THE COURT:  Anything else from the government?

25          MR. SWERGOLD:  No.  Thank you, your Honor.

1           THE COURT:  Anything else from the defendants?

2           MR. TALKIN:  No.  Thank you, your Honor.

3           MR. SAPONE:  No.  Thank you, your Honor.

4           THE COURT:  Thank you very much for cooperating in

5    this difficult task of getting this together.  Let's get

6    moving.

7           MR. TALKIN:  Thank you, your Honor.

8           MR. SAPONE:  Thank you.

9           MR. SWERGOLD:  Thank you.

10          (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25