

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 28, 2020

**BY ECF**
The Honorable Colleen McMahon
Chief United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007

  Re: **United States v. Cahill**, 20 Cr. 521 (CM)

Dear Chief Judge McMahon:

  The Government respectfully submits this letter in opposition to defendant James Cahill's motion to modify the conditions of his pretrial release. The defendant, a powerful labor leader in New York State, led a group of labor officials in a scheme to accept bribe payments in exchange for abusing their authority as union and labor officials. The evidence of his guilt is overwhelming, captured on both audio and video recordings and wiretaps on his phone. In addition, the defendant has extensive ties to members of organized crime, which is more than sufficient to justify the current bail restrictions in order to protect the public and the safety of potential witnesses in this case. The defendant's current bail conditions – which include home detention with electronic monitoring – are the least restrictive means to ensure the safety of the community and the defendant's appearance in court. For the reasons set forth below, the Court should deny Cahill's request.

  **I.** **Procedural Background**

  On October 1, 2020, Cahill and ten other defendants were charged in Indictment 20 Cr. 521 (CM). (Doc. No. 1). Cahill was charged in each of the three counts in the Indictment: (1) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); (2) honest services fraud conspiracy, in violation of 18 U.S.C. §§ 1343, 1346, and 1349; and (3) conspiracy to violate the Taft-Hartley Act, in violation of 18 U.S.C. § 371 and 29 U.S.C. § 186. (*Id.*) Cahill was arrested on September 30, 2020 and presented the next day before Magistrate Judge Lehrburger. At the presentment, Judge Lehrburger ordered the following agreed-upon bail package: (i) a $500,000 Personal recognizance bond, cosigned by three financially responsible persons (Cahill's two sons and brother), and secured by Cahill's son's property; (ii) home detention with electronic monitoring, with allowances for approved work, medical appointments for Cahill and his spouse, and court appearances and attorney visits; (iii) travel restricted to SDNY/EDNY; (iv) surrender travel documents and no new applications; (v) pretrial supervision as directed by Pretrial Services; (vi) the defendant shall not to possess a firearm, destructive device, other weapon; (vii) the

defendant may not engage in business related to the New York State Building and Construction Trades Council, Local 638 of the Enterprise Association of Steamfitters ("Local 638"), and Local Union 200 of the United Association of Journeyman and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("Local 200"); and (viii) the defendant may not have contact with co-defendants unless in the presence of counsel. (Doc. No. 14). Cahill was released the same day with one day to surrender his passport and one week to meet the remaining conditions. (*Id.*)

While on pretrial release, Cahill has sought several temporary bail modifications, some of which the Government has agreed to after conferring with defense counsel and Pretrial Services. (*See* Doc. No. 28 (travel to New Jersey for medical appointments, on consent); Doc. No. 36 (permission to leave home one day a week to visit specified stores to shop for his family, on consent); Doc. No. 57 (permission to attend baptism and reception for his brother's grandchildren, over objection from Government and Pretrial Services to attending the reception); Doc. No. 62 (permission to travel to summer home for one day to winterize the home, on consent)). On December 18, 2020, Cahill moved the Court to modify his bail conditions by replacing home detention with a curfew, during which there would be virtually no restrictions on where Cahill goes or who he meets with during the day.

## II. <u>Applicable Law</u>

Under the Bail Reform Act, defendants are to be detained if no condition or combination of conditions "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). If the judicial officer determines that the defendant cannot be released simply on his own recognizance or an unsecured bond, the judicial officer shall order the defendant's releases subject to a combination of conditions set forth in 18 U.S.C. § 3142(c). In making a determination about whether to release the defendant and subject to what conditions, the Court is to consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . a controlled substance [or] firearm . . .;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of

       sentence for an offense under Federal, State, or local law; and

    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C § 3142(g).

### III. Discussion

  The Court should deny Cahill's request for less restrictive conditions of pretrial release because the factors set forth in Section 3142 support the continuation of his current conditions.

  *First*, Cahill is charged with engaging in a multi-year fraudulent scheme to enrich himself to the detriment of the men and women of organized labor in New York State.  Prior to his arrest, Cahill was the President of the Trades Council, which represents over 200,000 unionized construction workers in New York State (including members of Local 638), making Cahill one of the most powerful labor officials in the state.  As alleged in the Indictment, Cahill was the leader of a racketeering enterprise comprised of current and former officials of Local 638 who agreed with each other to accept bribes and betrayed their union's trust by taking actions favorable to non-union employers.  Cahill and other members of the enterprise conspired to commit honest services fraud, Taft-Hartley violations, and state bribery offenses.  Moreover, Cahill brought others into the enterprise and exercised considerable influence over the affairs of the enterprise.

  During the course of the Government's investigation, Cahill repeatedly took bribes during recorded meetings with a confidential source (the "CS"), a non-union employer working at the direction of law enforcement.[1]  For example, between October 2018 and June 2020, Cahill took approximately 17 bribes totaling over $44,000, sometimes alone and other times at meetings where other members of the enterprise also received bribes.  Cahill also used his position of authority to secure the election of his preferred candidates within the leadership of Local 638, including installing leaders more likely to accede to Cahill's corrupt influence.  For example, at a meeting on October 22, 2018, at which Cahill accepted a $3,000 bribe from the CS, Cahill told the CS that his co-defendant Cristopher Kraft was going to move into a more powerful position with Local 638's leadership, that co-defendant Patrick Hill would be taking over Kraft's territory, and that co-defendant Scott Roche would be installed as Local 638's Business Agent at Large, which would bring about favorable changes for Cahill and the CS.  Cahill told the CS, in sum and substance, "after the election, everybody will be good."  Cahill further told the CS, in sum and substance, that "this guy Paddy Hill . . . Paddy Hill has never held office but we want him there because he'll do the right thing," which additional evidence (including Hill's repeated receipt of bribe payments) indicated meant that Cahill wanted Hill in a leadership position because Hill would accept bribes.  And in another recorded meeting on December 19, 2018, Cahill told the CS, in sum and substance, that "Scott Roche is the main guy, and he don't want to do nothing unless he talks to me so far.  I think it's going to work out.  I'll bring him to you.  I'm gonna see him tomorrow.  He asks me who

---

[1] The CS is referred to in the Indictment as "Employer-1."

to put where . . . ," demonstrating Cahill's ability to draw other Local 638 officials into his corrupt scheme.

Cahill also explicitly directed the CS not to become a union member, which was directly at odds with Cahill's responsibilities to protect the best interests of the hundreds of thousands of union members who were represented by the Trades Council. For example, in a recorded meeting on October 21, 2019, Cahill told the CS, in sum and substance, not to sign with a union, but instead to "tell everyone to go fuck themselves" because "if you become union, you'll have 12 fucking guys on your back." Cahill further advised the CS, in sum and substance, to "go forward. Do not stop. There's nobody who can stop you. The only person who can stop you is you yourself." In sum and substance, Cahill assured the CS of his assistance and explained that the CS should "fuck everybody as much as you want." During the same conversation, Cahill told the CS, in sum and substance, to tell Cahill what the CS wanted from certain union officials who are "all petrified. I don't know the reason why they're so petrified. I never gave them a reason to be petrified . . . . But didn't they shit their pants when you told them you're friends with me?"

As another example, in a recorded meeting in December 2018, Cahill met with the CS and co-defendant Patrick Hill, a Local 638 Business Agent. During the meeting, at which both Cahill and Hill accepted $2,500 bribes, Cahill told Hill, in sum and substance, "In Nassau, you leave [the CS] alone," meaning that Hill, who otherwise was required to protect the interests of Local 638 in Nassau County, would not make trouble for the CS, who wanted to do non-union work in Hill's territory. Following the meeting, Cahill told Hill, during a phone call intercepted over Cahill's phone, in sum and substance, "welcome to the real world," demonstrating Cahill's view that bribery and betraying the trust of union members was how Cahill did business.

*Second*, the weight of the evidence of Cahill's guilt is overwhelming. As set forth in just some examples above, Cahill is caught on tape time and again accepting bribes and conspiring with other members of the enterprise to accept bribes to the detriment of Local 638 and its members. In addition, at the time of Cahill's arrest and in the days after, law enforcement executed search warrants (i) at Cahill's residence and found approximately $14,500 in a safe, and (ii) on Cahill's safe deposit box at a bank and recovered approximately $200,000. Critically, Cahill failed to disclose this significant amount of cash at his disposal during his interview with Pretrial Services, declaring that he had only $600 in cash.

*Third*, and most importantly from the perspective of danger to the community, Cahill has extensive ties to organized crime. These ties make the current conditions necessary to ensure that Cahill's whereabouts are continually monitored to prevent him from meeting and collaborating with unindicted coconspirators or from intimidating witnesses, or encouraging others to do so. In recorded conversations, Cahill has bragged, in substance and in part, that he is the last of the "Westies," a reference to a criminal organization, originally based on the West Side of Manhattan, that has exercised influence over a variety of industries for decades, including the construction industry. Its former leader, James Coonan, was prosecuted and convicted in this District in or about 1988 for a number of racketeering-related crimes, including murder and extortion, which arose in part from an alliance with the Gambino Crime Family. Cahill's brother, Mickey Cahill, was an identified member of the "Westies."

Cahill has also discussed during recorded meetings his relationship with organized crime members. For example, during a meeting on March 13, 2020, Cahill accepted a $3,000 bribe from the CS and told the CS, in sum and substance, "John [Gotti, former boss of the Gambino Crime Family] was like this [crossing his fingers] with my brother and brother-in-law and this guy, Bosko. That was his crew. That was his Irish crew." Here, Cahill appears to be referring to his brother Mickey Cahill, his brother-in-law Buddy Leahy, and former head of the Westies Bosko Radonjic. Cahill then continued, in sum and substance, "Well, Bosko's understudy is Michael Michael. He's my guy. . . . So now, Mickey's gone, Buddy's gone, and he's, he's, now Michael is around and Louis is in play now. And Louis was very tight with my brother Mickey who was tight with Michael." Here, Cahill is explaining that he has a close relationship ("my guy") with an individual known as "Michael Michael," which is a frequent moniker used to describe Mileta Miljanic. Miljanic is believed to be the leader of a Serbian organized crime family called Group Amerika/Grupo Amerika, and Cahill has been surveilled meeting with Miljanic on numerous occasions during the investigation in this case.[2] In addition, Cahill's reference to "Louis" is believed to be a reference to Louis Filippelli, a capo in the Gambino Crime Family who Cahill has also been surveilled meeting with during this investigation.[3]

During that same conversation, Cahill also explained that Miljanic was in a crew that Cahill described as a "mass murdering crew," and that Cahill had to intervene to address a death threat made against Cahill's nephew, Mickey Cahill's son, who wanted to leave a project that involved Miljanic. Among other things, Cahill described how "I met with Louis [Filippelli], he says 'You know your nephew…' I says 'Whoa stop right there,' I says 'Stop right there. You're gonna continue this conversation, my nephew gets fuckin' complete, none of yous fuckin' bother him. If you bother him, I'm gonna go away from yous, I won't talk to yous, I'm done. That's family, you need to move on.' To which they did. So what does Louis do? He goes partners with Michael Michael in the construction business, and they're happy as pigs in shit." Here, Cahill was explaining how, after his nephew Michael Cahill received a death threat from Miljanic and his crew, Cahill personally intervened with Filippelli to obtain protection for Michael Cahill, threatening to withhold continued access to himself and his position of power and influence in organized labor unless Michael Cahill was able to leave the partnership with Miljanic without being harmed ("If you bother him, I'm gonna go away from yous, I won't talk to yous, I'm done.").

As made clear in these recordings, Cahill has deep ties to leading members of organized crime who are known to engage in acts of violence and intimidation, which poses a threat to potential witnesses in this case, especially were Cahill able to go anywhere and meet with anyone without any real ability by Pretrial Services to monitor his movements.

---

[2] *See* OCCRP, "Group America: A US-Serbian Drug Gang With Friends in the Shadows," (Sept. 1, 2020) https://www.occrp.org/en/group-america/.

[3] Filippelli was convicted (i) in or about 2006 in the United States District Court for the Southern District of New York of racketeering and extortion and sentenced to 46 months' imprisonment, and (ii) in or about 2008 in the United States District Court for the Eastern District of New York of extortion and sentenced to an additional five months' imprisonment.

In seeking to downgrade his bail conditions from home detention to a curfew, during which Cahill would be virtually unrestricted in his movement, Cahill provides only conclusory claims of hardship that are entirely insufficient to support his request. For example, Cahill claims that his current bail conditions have prohibited him from attending a number of important family gatherings. But Cahill provides no specifics about these gatherings, and he can hardly complain when the Government has considered and agreed to several prior requests to attend certain family gatherings. Similarly, Cahill claims that he has been unable to complete unexpected errands without providing any explanation for what those errands entailed and whether he attempted to obtain permission from Pretrial Services to complete the task. Cahill also claims that he cannot take walks while under home detention, but he offers no details about whether he has explored an alternative with Pretrial Services (similar to the way in which Cahill and Pretrial Services arranged for Cahill to take weekly trips to certain stores to attend to family errands). Finally, Cahill notes that he and his wife cannot babysit their grandchildren as frequently as they may have in the past. In light of the danger posed by the defendant, however, the fact that he cannot go to his grandchildren's houses (while they can, of course, come to his) is not a basis to modify his bail conditions.

### IV.  Conclusion

For the foregoing reasons, the Government respectfully submits that the Court deny the defendant's request to modify the conditions of his pretrial release.

Respectfully submitted,

ILAN GRAFF
Attorney for the United States
Acting Under Authority Conferred by
28 U.S.C. § 515

by:   /s/ Jason M. Swergold
Jason M. Swergold
Danielle R. Sassoon
Jun Xiang
Assistant United States Attorneys
Laura de Oliveira
Special Assistant United States Attorney
(914) 993-1963
(212) 637-1115 / -2289
(631) 853-4686

**CC (By ECF)**
Sanford Talkin, Esq. (counsel for James Cahill)