

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 12, 2021

**BY ECF**
The Honorable Colleen McMahon
Chief United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007

> **Re:**  **United States v. Cahill**, 20 Cr. 521 (CM)

Dear Chief Judge McMahon:

The Government recently learned of Rule 17(c) subpoenas issued by counsel for defendant James Cahill without notice to the Government that, in the Government's view, were improper subpoenas under Federal Rule of Criminal Procedure 17(c).  After discussions with Cahill's counsel, he decided to withdraw those subpoenas, but asserted that this withdrawal does not prevent Cahill from moving *ex parte* for issuance of future subpoenas.  Defense counsel also indicated that he has already received some records in response to his Rule 17(c) subpoenas. Because the withdrawn subpoenas were improper under Rule 17(c), the Government respectfully requests that the Court direct Cahill's counsel to turn over the subpoenaed records to the Court and destroy any copies of those materials.  In addition, the Government respectfully requests that the Court direct counsel for all defendants in this case: (1) to notify the Government of any extant Rule 17(c) subpoenas to the extent those subpoenas were issued without leave of the Court to proceed without notice to the Government; and (2) to notify the Government of any future Rule 17(c) absent leave from the Court to proceed *ex parte*.

## I.    Background

On October 1, 2020, Cahill and ten other defendants were charged in Indictment 20 Cr. 521 (CM).  (Dkt. 1).  Cahill was charged in each of the three counts in the Indictment: (1) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); (2) honest services fraud conspiracy, in violation of 18 U.S.C. §§ 1343, 1346, and 1349; and (3) conspiracy to violate the Taft-Hartley Act, in violation of 18 U.S.C. § 371 and 29 U.S.C. § 186.  (*Id.*)  The Indictment alleged, among other things, that Cahill and his coconspirators accepted bribes from "Employer-1" in exchange for benefits in the construction industry, including to the detriment of members of the Enterprise Association of Steamfitters Local 638 ("Local 638").

The Government was recently made aware that defendant Cahill has served Rule 17(c) subpoenas, including on Local 638 (the "Local 638 Subpoena"), seeking documents related to

Employer-1 and his companies.  *See* Exhibit A.  The Local 638 Subpoena specifies that the subpoena can be satisfied by delivering the requested materials to Cahill's attorney.  Defense counsel had not notified the Government of the Local 638 Subpoena or any other Rule 17(c) subpoenas prior to serving them.  In a recent conversation with the Government, defense counsel confirmed that he had served subpoenas on four unions for records related to Employer-1 and his companies and on phone companies for phone records for number(s) that defense counsel believes were used by Employer-1.  Although the form for the Local 638 Subpoena specifies certain procedures a party must follow before requesting and serving a Rule 17(c) subpoena, such as consulting the local rules or the assigned judge, defense counsel acknowledged that he had not received judicial approval to issue the subpoena without notice to the Government and to request that the subpoenaed documents be returned directly to counsel's office, rather than to the Court.  *See* Exhibit A at 2.  Defense counsel indicated that he had already received some records in response to these subpoenas.  Defense counsel subsequently notified the Government that he intended to withdraw the subpoenas but asserted that the "withdrawal does not in any way abridge Cahill's right to move *ex parte* for issuance of similar or, any subpoena."  Defense counsel also indicated that for the time being, he intended to retain copies of the records already received in response to his Rule 17(c) subpoenas.

## II.    <u>Applicable Law</u>

Federal Rule of Criminal Procedure 17 governs the issuance of subpoenas in criminal cases.  Pursuant to Rule 17(a):

> A subpoena must state the court's name and the title of the proceeding, include the seal of the court, and command the witness to attend and testify at the time and place the subpoena specifies.  The clerk must issue a blank subpoena—signed and sealed—to the party requesting it, and that party must fill in the blanks before the subpoena is served

Rule 17(c) governs the issuance of trial subpoenas that seek the production of documents and other items in criminal cases.  *See* Fed. R. Crim. P. 17(c).  Under the Rule, "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates," and "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence."  *See* Fed. R. Crim. Pro. 17(c)(1).

Discovery in criminal cases is governed by Rule 16, and should not be conducted through the issuance of subpoenas pursuant to Rule 17.  *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 219-20 (1951).  As the Supreme Court has explained, "[i]t was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms."  *Id.* at 220; *see also United States v. Purin*, 486 F.2d 1363, 1368 (2d Cir. 1973) ("A subpoena *duces tecum* in a criminal case is not intended as a means of discovery.").  Unlike the civil rules of procedure—which permit the issuance of subpoenas to seek production of documents or materials which, although themselves not admissible, may lead to admissible evidence—the criminal rules do not authorize the issuance of such broad pretrial subpoenas.  *See United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995); *United States v. Gross*, 24 F.R.D. 138, 141

(S.D.N.Y. 1959) (Rule 17(c) cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case.  This type of discovery, permissible under the Federal Rules of Civil Procedure, has not been authorized for criminal trials.").

Rule 17(c) subpoenas, even where they may be utilized, are subject to strict limitations.  In *United States v. Nixon*, 418 U.S. 683, 699-700 (1974), the Supreme Court explained that to require production of materials pursuant to Rule 17(c), the party seeking production must show that:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

In short, the party seeking the documents "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  *Id.*; *see United States v. R. Enterprises, Inc.*, 498 U.S. 292, 296 (1991).

As an initial matter, the party seeking production must demonstrate that the requested materials are admissible as evidence at trial.  *See, e.g.*, *R. Enterprises, Inc.*, 498 U.S. at 299 (under *Nixon*, "a party must make a reasonably specific request for information that would be both relevant and admissible at trial"); *United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992) (quashing subpoena where defendant "failed to establish with sufficient specificity the evidentiary nature of the requested materials"); *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980) ("[R]ule 17(c) is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial."); *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965) (in criminal cases, subpoena duces tecum must satisfy relevancy and admissibility tests); *Cherry*, 876 F. Supp. at 552 ("[I]n order to be procurable by means of a Rule 17(c) subpoena, materials must themselves be admissible evidence."); *United States v. Berg*, No. 84. Cr. 190 (S-2), 1987 WL 8078, at *1 (E.D.N.Y. Feb. 27, 1987) (granting motion to quash subpoenas issued pursuant to Rule 17(c) because, among other reasons, "the defendants have failed to demonstrate that the materials sought are admissible as evidence").

Under the *Nixon* test, the documents sought "cannot be *potentially* relevant or admissible, they must meet the test of relevancy and admissibility at the time they are sought."  *United States v. Burger*, 773 F. Supp. 1419, 1425 (D. Kan. 1991) (citing *Marchisio*, 344 F.2d at 669); *Cherry*, 876 F. Supp. at 552 (same).  Thus, "a mere hope that the documents, if produced, may contain evidence favorable to the defendant's case will not suffice.  Rule 17(c) requires a showing that the materials sought are *currently admissible* in evidence; it cannot be used as a device to gain understanding or explanation."  *United States v. Rich*, No. 83 Cr. 579, 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984) (internal quotation marks omitted) (emphasis added); *see Cuthbertson*, 630 F.2d at 145 ("broad request" for documents "based solely on the mere hope that some exculpatory material might turn up" does not justify enforcement of Rule 17(c) subpoena); *see also Purin*, 486 F.2d at 1368; *United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962).

"Where, as here, a party moves to quash subpoenas as unduly 'unreasonable or oppressive,' the party seeking compliance must make a preponderance showing that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence." *United States v. Barnes*, 560 F. App'x 36, 39-40 (2d Cir. 2014); *see id.* at 40 (finding no abuse of discretion in district court's decision to quash a subpoena for which defense counsel proffered "only speculation that inmates cooperating with the government were conspiring to testify falsely against him and that the subpoenaed materials would so demonstrate"); *Murray*, 297 F.2d at 821 (observing that subpoenaed materials must themselves be admissible); *In re Irving*, 600 F.2d 1027, 1034 (2d Cir. 1979). A movant's "conclusory statements that the documents may be relevant and admissible are insufficient" to overcome those hurdles. *Burger*, 773 F. Supp. at 1425 (citing *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981)). In short, the test for enforcement of a pretrial subpoena is whether the subpoena represents a good faith effort to obtain relevant, admissible evidence that is useful only if inspected before trial. *Bowman Dairy*, 341 U.S. at 220-21.

Finally, the defendant must establish that the defense's "application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 700; *United States v. Yian*, No. 94 Cr. 719, 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995) (subpoena that "call[s] for the production of the entire investigative file . . . is accurately described as a fishing expedition"); *Cuthbertson*, 630 F.2d at 144 ("[T]est for enforcement is whether the subpoena constitutes a good faith effort to obtain *identified evidence* rather than a general 'fishing expedition' that attempts to use the rule as a discovery device.") (emphasis added).

Courts have repeatedly held that a Rule 17(c) subpoena should not be used to obtain impeachment material. *See, e.g.*, *Nixon*, 418 U.S. at 701 ("Generally the need for evidence to impeach witnesses is insufficient to require its production in advance of trial") (citations omitted); *Cherry*, 876 F. Supp. at 552; *United States v. Iozia*, 13 F.R.D. 335, 340 (S.D.N.Y. 1952) (Rule 17(c) cannot be used "to require in advance of trial, and in preparation for trial, a disclosure to the defendant of information which may tend to impeach persons the Government may or may not call as witnesses"); *United States v. Nektalov*, No. S2 03 Cr. 828, 2004 WL 1574721, at *2 (S.D.N.Y July 14, 2004) ("documents sought solely for impeachment purposes are not the proper subject of a Rule 17(c) subpoena"); *United States v. Jasper*, No. 00 Cr. 825, 2003 WL 1107526, at *2 (S.D.N.Y. Mar. 13, 2003); *United States v. Coriaty*, No. 99 Cr. 1251, 2000 WL 1099920, at *7 (S.D.N.Y. Aug. 7, 2000). It is similarly axiomatic that a Rule 17 subpoena is not the appropriate method of seeking the prior statements of an anticipated trial witness. Indeed, Rule 17 by its terms expressly prohibits a party from serving a subpoena intended to obtain a witness's prior statements. *See* Fed. R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule.").

The Government has standing to oppose or move to quash improper Rule 17(c) subpoenas. *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1996); *see United States* v. *Giampa*, 1992 WL 296440 (S.D.N.Y. Oct. 7, 1992), at *1-2 (party to criminal case has standing to move to quash Rule 17(c) subpoena to another if subpoena infringes on movant's "legitimate interests"). As the adverse party in the litigation in which an improper Rule 17(c) subpoena has been requested, the

Case 1:20-cr-00521-CM   Document 75   Filed 01/12/21   Page 5 of 7

Page 5

Government has standing to challenge any such a request, as it has a "legitimate interest" in seeing that the parties to the case comply with applicable federal law.[1]

## III.   Discussion

The Local 638 Subpoena, as well as any similar subpoenas, are improper under *Nixon*. In particular, the defense cannot show that the subpoena is sufficiently specific, that the records sought are relevant and admissible, or that the subpoena is intended as anything other than an improper fishing expedition for impeachment material pertaining to Employer-1. *See Nixon*, 418 U.S. at 699-700. Although defense counsel has withdrawn his subpoenas, that does not moot the issue because he has already improperly received some records in response to these subpoenas and indicated that he intends to retain those records.

*First*, the subpoena fails to meet *Nixon*'s specificity requirement. The subpoena seeks sweeping categories of documents without any date restriction, such as "**all** documents and communications with or concerning [Employer-1]," and "**all** documents and communications with or concerning [Employer-1]'s companies." The subpoena is also not limited to any date range. The vague and generic request for "all records" for an unlimited period of time is far too general and sweeping to satisfy Rule 17's requirements. *See, e.g.*, *United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996) (specificity element requires "more than the title of the document and conjecture as to its contents") (quoting *Arditti*, 955 F.2d at 345); *United States v. Elife*, 43 F.R.D. 23, 25 (S.D.N.Y. 1967) (subpoena improper where not directed at "specific documents"); *United States v. Louis*, 04 Cr. 203, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005); *Jasper*, 2003 WL 1107526, at *3 ("The defendant has failed to meet the requirements of a Rule 17(c) subpoena since the documents requested are not specifically identified and the defendant has failed to show that all of the documents requested would be relevant."); *United States v. Leonard*, 817 F. Supp. 286, 295 (E.D.N.Y. 1992) (subpoena seeking "virtually every DEA document relating to [defendant]" is a "clear[] example" of lack of specificity). A broad request, such as this one, is improper and implies a mere hope that something useful might turn up, which is not an appropriate use of a Rule 17 subpoena. *Cuthbertson*, 630 F.2d at 146; *Weissman*, 2002 WL 31875410, at *1 (mere hope that something will turn up in requested document does not meet specificity requirement); *United States v. Nachamie*, 91 F. Supp. 2d 552, 564 (S.D.N.Y. 2000) ("the language 'All correspondence and other documents, including but not limited to documents reflecting, discussing, or relating' is overbroad and smacks of a fishing expedition."); *United States v. Brown*, 95 Cr.. 168, 1995 WL 387698, at *10 (S.D.N.Y. June 30, 1995).

---

[1] Even if the Court were to question the Government's standing to object to the subpoenas, the Court has an independent responsibility to evaluate the propriety of the subpoena. *See, e.g.*, *United States v. Weissman*, No. 01 Cr. 529, 2002 WL 31875410, at *1 n.1 (S.D.N.Y. Dec. 26, 2002) (despite defendant's assertion that the Government lacked standing to move to quash, the court addressed the Government's motion because it was "the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)"); *see also United States v. Tomison*, 969 F. Supp. 587, 594 (E.D. Cal. 1997) ("As the Supreme Court has explained, it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose.").

*Second*, and for similar reasons, the defense cannot show that the requested records are relevant and admissible, rather than merely "potentially relevant or admissible," which under controlling precedent is not enough. *Marchisio*, 344 F.2d at 669; *United States v. Jenkins*, 2003 WL 1461477 at *5 (S.D.N.Y. 2003) (a showing of potential relevance does not meet *Nixon* standard). It is the defendant's burden to demonstrate that *all* of the material requested is admissible, which the Government anticipates the defense will be unable to do given the breadth of the requests. The Government will not speculate about the contents of these records, but requests an opportunity to reply to any arguments the defendant makes about the admissibility and relevance of the records it seeks. At the very least, it seems clear that the requests are not properly tailored to obtain particular items of admissible evidence and that it will be nigh impossible to demonstrate that the universe of material requested will be admissible at trial, even if the productions *might* contain something *potentially* useful to the defense. *See United States v. Jones*, No. 17 Cr. 791 (LAK), Dkt. No. 99 (denying request for Rule 17(c) subpoenas where, among other things, the defendant did not "explain why all responsive documents 'without regard for date' could possibly be relevant").

It is well established that a Rule 17 subpoena "in a criminal case is not intended as a means of discovery." *Purin*, 486 F.2d at 1368. But that is how the defense is trying to use the subpoenas here. The vagueness of the subpoena requests exposes that the defense is proceeding on conjecture about the contents of these records. Such a catch-all request reveals that these subpoenas are being cast in an improper fishing expedition for potentially useful material rather than for the permissible purpose of obtaining discrete items of admissible evidence. *See, e.g.*, *Bowman Dairy*, 341 U.S. at 221 ("catch-all provision" in subpoena invalid as fishing expedition); *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) (subpoenas seeking "any and all" materials justify inference of fishing expedition); *Louis*, 2005 WL 180885, at *5 (same).

*Third*, the subpoena on its face improperly seeks records for the defense to use to attack Employer-1's credibility. Not only does it seek all documents related to Employer-1 and his companies, but all documents and communications "concerning any investigation or audit" of Employer-1 and his companies. *See also Jones*, 17 Cr. 791 (LAK), Dkt. No. 99 (finding that the defendant's broad requests "more than suggests that these proposed subpoenas are a fishing expedition for impeachment material"). That is not proper under Rule 17. Rule 17(c) subpoenas cannot be used to obtain impeachment materials before trial because "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon,* 418 U.S. at 701-02; *Bowman Dairy*, 341 U.S. at 221 (materials subject to Rule 17(c) subpoena must be "admissible as evidence"); *Cuthbertson*, 630 F.2d at 144-45 (impeachment materials generally not subject to pretrial subpoenas because they "ripen into evidentiary material for purposes of impeachment *only if and when* the witness testifies at trial") (emphasis added); *United States v. Sawinski*, 2000 WL 1702032 at *2 (S.D.N.Y. 2000) (impeachment materials cannot be obtained by Rule 17(c) subpoena); *Cherry*, 876 F.Supp. at 553 ("Courts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment"); *id.* at 552 ("The weight of authority holds that in order to be procurable by means of a Rule 17(c) subpoena, materials *must themselves* be admissible evidence."); *Nektalov*, 2004 WL 1574721, at *2 ("documents sought solely for impeachment purposes are not the proper subject of a Rule 17(c) subpoena").

The defense would be hard pressed to explain how the stab in the dark for material in "all documents and communications" pertaining to Employer-1 can relate to anything other than an attempt to drum up documents to harass a potential Government witness and impeach his credibility.  It is particularly unwarranted here, where there is no trial date and the Government has not made any final determinations about who will be a witness at trial, and where the Government has concerns about the intimidation and harassment of Employer-1, whose identity is known to the defendants.  *See Iozia*, 13 F.R.D. at 340 (Rule 17(c) cannot be used "to require in advance of trial, and in preparation for trial, a disclosure to the defendant of information which may tend to impeach persons the Government may or may not call as witnesses").

For all these reasons, the defense cannot meet its burden under *Nixon*.  The Government therefore submits that the Court should direct defense counsel to destroy copies of the records already received.  In the alternative, the Government respectfully requests that the Court "direct that the subpoenaed material be produced to the adverse party." *Reyes*, 162 F.R.D. at 470.

In addition, defense counsel appears not to have followed the proper procedures for requesting and serving a Rule 17(c) subpoena.  For example, contrary to the plain requirements set forth on the subpoena's cover page, *see* Exhibit A at 2, defense counsel did not ask the Court whether it "require[d] prior judicial approval for the issuance of the subpoena, either on notice or ex parte," or required that the documents be returned to the Court, rather than to counsel's offense. *See* Exhibit A.  Because the Government is not aware whether counsel for other defendants in this case have issued similar subpoenas without notice to the Government (and without leave of the Court), and because Cahill's counsel asserted that he may seek additional Rule 17(c) subpoenas *ex parte* from the Court, the Government respectfully requests that the District Court direct defense counsel for all defendants in this case: (1) to notify the Government of any extant Rule 17(c) subpoenas to the extent those subpoenas were issued without leave of the Court to proceed without notice to the Government; and (2) to notify the Government of any future Rule 17(c) absent leave from the Court to proceed *ex parte*.

Respectfully submitted,

ILAN GRAFF
Attorney for the United States
Acting Under Authority Conferred by
28 U.S.C. § 515


by:    /s/ Danielle R. Sassoon
       Danielle R. Sassoon
       Jason M. Swergold/Jun Xiang
       Assistant United States Attorneys
       Laura de Oliveira/ Special Assistant U.S Attorney
       (914) 993-1963/(212) 637-1115 / -2289


**CC (By ECF)**
Sanford Talkin, Esq. (counsel for James Cahill)