L3B5cahC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,              New York, N.Y.

            v.                         20 Cr. 521 (CM)
                                       Remote Proceeding
JAMES CAHILL,
CHRISTOPHER KRAFT,
PATRICK HILL,
MATTHEW NORTON,
WILLIAM BRIAN WANGERMAN,
KEVIN McCARRON,
JEREMY SHEERAN,
ANDREW McKEON,
ROBERT EGAN,
SCOTT ROCHE,
ARTHUR GIPSON,

            Defendants.
------------------------------x
                                       March 11, 2021
                                       3:30 p.m.

Before:

                  HON. COLLEEN MCMAHON,

                                       District Judge
```

1                           APPEARANCES

2    AUDREY STRAUSS
          United States Attorney for the
3         Southern District of New York
     BY:  JASON M. SWERGOLD
4         Assistant United States Attorney
              -AND-
5    BY:  LAURA DE OLIVEIRA
          Suffolk County District Attorney's Office

6    TALKIN, MUCCIGROSSO & ROBERTS
          Attorneys for Defendant Cahill
7    BY:  SANFORD N. TALKIN

8    SAPONE & PETRILLO, LLP
          Attorneys for Defendant Kraft
9    BY:  EDWARD V. SAPONE

10   ALBERT E. BANKS
          Attorney for Defendant Hill
11

12   JAMES R. FROCCARO, JR.
          Attorney for Defendant Norton

13   FRANKFURT KURNIT KLEIN & SELZ, P.C.
          Attorneys for Defendant Wangerman
14   BY:  BRIAN E. MAAS
          TYLER MAULSBY
15

16   CAMILLE M. ABATE
          Attorney for Defendant McCarron
17

18   MEISTER SEELIG & FEIN, LLP
          Attorneys for Defendant Sheeran
     BY:  HENRY E. MAZUREK
19        EVAN LIPTON

20   STEVE ZISSOU & ASSOCIATES
          Attorneys for Defendant McKeon
21   BY:  STEVE ZISSOU

22   SERCARZ & RIOPELLE, LLP
          Attorneys for Defendant Egan
23   BY:  ROLAND G. RIOPELLE

24   ABRAMSON & MORAK
          Attorneys for Defendant Roche
25   BY:  GLENN H. MORAK

L3B5cahC

1                    APPEARANCES (Cont'd)

2  DOAR, RIECK, KALEY & MACK
        Attorneys for Defendant Gipson
3  BY:   JOHN F. KALEY

            (Case called; The Court and all parties appearing virtually)

            THE COURT: If counsel could mute except when they are speaking, that would be helpful. Okay, Mr. O'Neill is going to do an on-the-record roll call. I need representation from counsel if your client is on the line and if your client consents to having this proceeding held remotely. Okay.

            THE DEPUTY CLERK: Judge, this is 20 criminal, 521, United States of America v. Cahill, et al. Counsel, your appearances.

            the government?

            MR. SWERGOLD: Good afternoon, your Honor. Jason Swergold and Laura De Oliveira appearing for the government.

            THE COURT: Good afternoon.

            THE DEPUTY CLERK: Defendant Cahill?

            MR. TALKIN: Good afternoon, your Honor. Sam Talkin for Mr. Cahill who is in my office with me. He consents to appearing by video and the document has been filed with the Court -- the consent document has been filed with the Court already.

            THE COURT: Thank you, Mr. Talkin.

            THE DEPUTY CLERK: Defendant Kraft.

            THE COURT: Mr. Sapone, you are muted.

            MR. SAPONE: The one thing I had to do and I didn't do it right. Good afternoon, your Honor, Ed Sapone for Chris

1  Kraft. Nice to see you, nice to see you all. He is on the
2  line. He consents to proceed remotely and we had sent in the
3  waiver, your Honor.
4          THE COURT: Thank you.
5          MR. SAPONE: You are welcome.
6          THE DEPUTY CLERK: Defendant Hill. Counsel?
7          MR. BANKS: Can you hear me now?
8          THE COURT: Yes.
9          THE DEPUTY CLERK: Who is speaking?
10         MR. BANKS: Okay, so this is Albert E. Banks appearing
11 on behalf of Mr. Hill. I am on my laptop and I don't know why
12 you weren't able to hear me when you went around the first
13 time.
14         THE DEPUTY CLERK: Your client?
15         MR. BANKS: It is my error, I believed that all
16 defendants were excused today, don't ask me why, and I spoke
17 with my client just a little while ago and I can try to get him
18 on the line. I know he has a daughter, he has a daughter with
19 special needs, and because I told him he was excused today I
20 don't know that he is going to get on the line right now.
21         THE DEPUTY CLERK: Do you waive his appearance,
22 counsel?
23         MR. BANKS: I do, and I believe I have executed the
24 CARES Act waiver and I believe you may have it in your
25 possession.

1           THE DEPUTY CLERK:  For Defendant Norton?

2           MR. FROCCARO:  Good afternoon, your Honor.  James

3  Froccaro for Mr. Norton who is seated beside me in my office,

4  Judge.  He signed the waiver Judge and we can proceed by video.

5           THE COURT:  Thank you.

6           THE DEPUTY CLERK:  Defendant Wangerman?

7           MR. MAAS:  Good afternoon, your Honor.  Brian Maas and

8  Tyler Maulsby for Mr. Wangerman.  Mr. Wangerman is on the phone

9  and we have submitted a CARES Act waiver.

10           THE DEPUTY CLERK:  Defense McCarron.

11           MS. ABATE:  Yes.  For Mr. McCarron this is Camille

12  Abate.  Good afternoon, your Honor.  Good afternoon, everyone.

13  Mr. McCarron is also on the phone.  We have also executed and

14  sent to the Court the waiver under CARES Act.

15           THE DEPUTY CLERK:  Defendant Sheeran?

16           THE COURT:  Mr. Mazurek?

17           MR. MAZUREK:  Hello.  Can you hear me?

18           THE COURT:  Now.

19           MR. MAZUREK:  Thank you, Judge.  Good afternoon.

20  Henry Mazurek and Evan Lipton on behalf of Mr. Sheeran who

21  appears over my left shoulder.  We have executed a CARES Act

22  waiver and agree to proceed remotely.

23           THE DEPUTY CLERK:  Defendant McKeon.

24           MR. ZISSOU:  Steve Zissou appearing for Mr. McKeon,

25  your Honor.  Mr. McKeon participating by phone.  A waiver has

1    been executed and returned to the Court.

2    THE COURT:  Thank you.

3    THE DEPUTY CLERK:  Defendant Egan.

4    MR. RIOPELLE:  Roland Riopelle on behalf of Egan, your
5    Honor, who you can see over my shoulder.  We have executed the
6    CARES Act waiver earlier this afternoon and submitted it to
7    Mr. O'Neill.  Thank you.

8    THE COURT:  Thank you.

9    THE DEPUTY CLERK:  Defendant Roche.

10    THE COURT:  Mr. Abramson?

11    THE DEPUTY CLERK:  Defendant Roche?  Counsel?

12    DEFENDANT ROCHE:  This is Scott Roche.  I am present,
13    your Honor.

14    THE COURT:  Mr. Roche is here.  Where is Mr. Roche's
15    lawyer?

16    DEFENDANT ROCHE:  That's a good question.

17    THE COURT:  Mr. Roche, somebody always ends up getting
18    dropped off these things so I am sure he is trying to get back
19    in.

20    DEFENDANT ROCHE:  Yes, your Honor.

21    THE DEPUTY CLERK:  I thought he was here on first go
22    round.

23    DEFENDANT ROCHE:  He was.

24    THE DEPUTY CLERK:  Defendant Gipson.

25    MR. KALEY:  Good afternoon, your Honor.  John Kaley

1   for Mr. Gipson.  He is on the line.  We have executed a CARES
2   Act waiver and submitted it to Mr. O'Neill.
3           THE COURT:  Terrific.  So, the only missing person is
4   Mr. Abramson who was here originally.  Jim, could we just put
5   in a quick call to him?
6           THE DEPUTY CLERK:  Yes.
7           MR. MORAK:  Your Honor, excuse me.  My Skype froze.
8   This Glenn Morak for Mr. Roche.  Mr. Roche is on the Skype
9   line.  I also sent in his waiver.  I read it to him and he
10  consents to proceeding remotely.
11          THE COURT:  Okay.  Everybody is here.  All right.
12  Then let's make this productive.
13          From the government, what is going on?
14          MR. SWERGOLD:  Yes.  Thank you, your Honor.  This is
15  Jason Swergold.
16          To bring your Honor up to speed on the discovery
17  that's been produced to date, we have made four large
18  productions that have included the recordings of the meetings
19  between the various defendants and individuals making
20  consensual recording for law enforcement.  We produced --
21          THE DEPUTY CLERK:  Let me stop you.  The court
22  reporter cannot get this, there is background noise.
23          THE COURT:  If you are not speaking, could you please
24  mute?  Ah.  Someone.
25          Mr. Swergold, I hate to ask you to do this, but would

1    you start again?

2    MR. SWERGOLD: Absolutely, your Honor.

3    The government has made four large productions to
4    date. They include the recordings of meetings between the
5    defendant and an individual who was making consensual recording
6    for law enforcement. As a courtesy we have produced draft
7    transcripts of many of those meetings, and the remainder of the
8    meetings have been sent to the vendor for transcription so we
9    anticipate having draft transcripts for the defendants for all
10   of the meetings.

11   We have produced any electronic devices seized from
12   the defendants both to the defendant individually in the early
13   productions and then, more recently, pursuant to the protective
14   order in this case we have cross-produced the electronic
15   devices to all of the defendants with the exception of
16   Mr. Sheeran who did not consent to that provision. But, all
17   the other defendants have now gotten cross-productions of the
18   electronic devices.

19   We have produced search warrant applications and
20   returns for phones for various premises, for a safety deposit
21   box, individual discovery to the defendants as appropriate,
22   investigative documents like photographs of pre-recorded buy
23   money or surveillance reports. And then, more recently, at the
24   end of February, we produced the wire taps for the three
25   defendants who are wiretap -- subject to wiretap orders in this

case as well as all of the accompanying paperwork for those wiretaps and some other wiretaps that were written in the same applications.

In terms of where we stand on discovery, that is the core, that is the evidence of the core conduct in this case, it is the largest tranche of materials. The government has issued grand jury subpoenas, we received rolling productions from third-parties that we are reviewing and will produce that to the defendants. We are finalizing our responsiveness reviews for some of the electronic devices and we will produce the subset of materials to the defendants although, as I have mentioned, we have produced the full images to all of the defendants.

There was an investigation by this office and the Department of Labor from I think at this point maybe six or seven years ago into some individuals at Local 638 which is one of the unions at issue in this case. We have gone through that file to see if there was -- it was a completely unrelated investigation so we have gone through that file to see if there is anything that we ought to produce to the defendants. We have identified some materials that are going to be pushed out to the defendants as well.

There is the remaining transcripts that I noted and then there may be a few additional documents, your Honor, as your Honor knows, there was some requests for delayed discovery

in this case which we have now produced those, the large bulk of that material, but we are obviously going back to our files repeatedly just to make sure that there isn't anything left that we have not produced and, of course, if we find any additional documents we will turn them over to the defendants. But, the bulk core conduct discovery, the recordings, the wire taps, and all of the accompanying paperwork and the search warrants have all been produced.

THE COURT: Okay. Thank you.

So, I now turn it over to the defendants and I would like to know who anticipates making motions and when they can be done.

MR. TALKIN: Your Honor, this is Sam Talkin for Mr. Cahill.

It is hard to tell whether we are going to be making motions yet. Only recently we received almost two terabytes of information on top of, right before that a large tranche of thousands of pages of dense wiretap applications that include probable cause actions so I think it is a little premature for us to be able to make that decision.

I have talked to some of the defense attorneys ahead of time, we were looking for 60 to 90 more days to look at the new discovery dump, go through everything, and figure out motions. I can tell you that, in all likelihood, the main motion practice would be T3 practice. I don't see very many

1  suppression issues as far as, you know, physical evidence,
2  identification, and statements.  But I am speaking for myself
3  only on that but just judging from what I have seen.  So, but
4  for us to be in a position to know where we are going with that
5  we definitely would respectfully request more time.
6        MR. RIOPELLE:  Your Honor, this is Roland Riopelle for
7  Defendant Egan.
8        Another issue that I would like to know more about if
9  more can be known is the materials that were produced just a
10 week or so go would seem to indicate that this is a case where
11 there might be a very significant superseding indictment
12 charging a whole lot of new defendants with a whole lot of new
13 crimes, and if that's going to happen I would rather make
14 motions once rather than twice.  So, I don't know whether the
15 government is in any position to tell us now whether it intends
16 to seek a superseding indictment or not but it would be useful
17 in terms of our schedule to know that if it can be known.
18        THE COURT:  Well, I'm with you on one thing,
19 Mr. Riopelle.  You don't want to make motions twice and I don't
20 want to decide them twice.  Okay?  So, we are on the same page
21 there.
22        MR. RIOPELLE:  I thought we would be, your Honor.  I
23 thought we would be.
24        THE COURT:  So I'm going to lateral this back to
25 Mr. Swergold.

1     MR. SWERGOLD:  Thank you, your Honor.

2     I think what I can say at this point is that, first of
3  all, if the defendants are contemplating making motions
4  regarding the Title III paperwork or any of the other stuff
5  that's been produced in this case, the fact of a superseder, in
6  my mind, would not actually affect that and the timing of it.
7  What I will say, though is that --

8     THE COURT:  No, but it might affect -- they might have
9  to make a second round of motions once they see who else is
10 going to be in the case.  I don't know.  There might be a
11 severance motion.  They might do this.  They might do that.
12 They would like to know what the universe of problems that they
13 face is.  It is not an unreasonable request.

14    MR. SWERGOLD:  No, it is not, your Honor.  I apologize
15 for talking over.  I don't have video so it was hard to tell.

16    I can say that it is unlikely that there would be a
17 superseding indictment in this case along the lines that
18 Mr. Riopelle is alluding to.

19    THE COURT:  You mean a giant superseder that adds 25
20 new defendants and 54 new counts?

21    MR. SWERGOLD:  That's correct, your Honor.

22    MR. RIOPELLE:  Thank you, Mr. Swergold.  That's a
23 relief to hear.

24    I have one other minor issue with the discovery, your
25 Honor, that I would like to raise.  The pdfs that have been

1  turned over, there are hundreds and hundreds of pages of them
2  and they are turned over in a format that is not word
3  searchable. If, when the government turns over materials in
4  the future in that format, it could make them word searchable,
5  it just makes our job much easier because, on behalf of
6  Mr. Egan I search for "Egan" in the first instance to see what
7  is said about Egan and I have done that with my tired old eyes
8  for the first 500 or so pages. For the next 500 or so, if they
9  can turn it over in a way that I can search it, let the
10  computer do the work, it will be done more efficiently and
11  probably more effectively.
12  　　　　So, if I could make that request, your Honor.
13  　　　　THE COURT: Not to mention more cheaply.
14  　　　　Mr. Swergold, it has been my experience that the
15  government does turn these things over in word searchable
16  fashion. What's going on?
17  　　　　MR. SWERGOLD: Your Honor, I will -- I also thought
18  that they were word searchable. I know that the version that I
19  have been working off of have been word searchable although at
20  the time when it was Bates stamped and burned it did not. We
21  will figure out a way to make that work and I will talk to
22  Mr. Riopelle and any other defense lawyer that has an issue,
23  and I would encourage any of the defense lawyers to the extent
24  there is any issue with discovery, please, reach out to us in
25  the first instance. We are here to make sure that we can

accommodate them in their review of the discovery.

I will look into this and figure out what is wrong and get it fixed.

MR. RIOPELLE: I will say, your Honor, on behalf of Mr. Egan. I have spoken to Mr. Swergold and his people a couple of times, they have been very cooperative. I want the Court to know that.

THE COURT: Excellent. Excellent. I am glad to hear it.

So, I take it everybody is on board with the 60 to 90-day period for further review of discovery and then we will meet again?

MR. MORAK: Your Honor, this is Glenn Morak for to Scott Roche. I got frozen out on Skype, I have now joined by phone.

THE COURT: Hi. How are you, Mr. Morak. You are having all kinds of problems.

MR. MORAK: I don't know what the problem was. I even put a suit on today to look well. I would consent to -- we received the tremendous amount of discovery, I have been working on this daily. I think a 90-day adjournment for us to finish that review would be acceptable and I have discussed that with my client.

THE COURT: Okay. Anybody have an objection to 90 days?

1     UNIDENTIFIED SPEAKER:  No objection, your Honor.

2     UNIDENTIFIED SPEAKER:  No objection, your Honor.

3     UNIDENTIFIED SPEAKER:  No, your Honor.

4     OFFICIAL REPORTER:  I'm sorry.  This is Pamela the reporter.

6     THE COURT:  Hi Pamela.

7     OFFICIAL REPORTER:  I don't know who was speaking.

8     THE COURT:  I think everybody said no objection. Probably you should note that no defense counsel objected. That sounds like an accurate depiction of the record.

11    Okay.  Well, who knows what things will be like in 90 days, except that I won't be in New York in 90 days but I can always get back to New York.  So, in the unlikely event that we are actually able to do this in a real courtroom, let's pick a date.

16    Mr. O'Neill, pick a date.

17    THE DEPUTY CLERK:  Judge, back to you.  When do you want to do it in June?  The week of the 7th, 14th, 21st?

19    THE COURT:  It sort of doesn't matter.  It doesn't matter.

21    THE DEPUTY CLERK:  So, we will put it on for Thursday the 10th, June 10th, 2:00.

23    THE COURT:  Okay.  Does that work for everybody?

24    MS. ABATE:  No, your Honor.  For Mr. McCarron.

25    I'm sorry.  That week I'm going to be away for any

1    35th wedding anniversary.

2             THE COURT:  I've got you beat by five years,
3    Ms. Abate.

4             MS. ABATE:  I will be available the rest of June but
5    that particular week of June 7th, which is my --

6             THE COURT:  We are going to accommodate Ms. Abate's
7    35th wedding anniversary.

8             MS. ABATE:  I appreciate it.

9             MR. RIOPELLE:  Your Honor, it is Roland Riopelle
10   speaking.

11            I just want to alert the Court that I have a niece
12   getting married in California at around that time.  I don't
13   have the date with me.

14            THE COURT:  You don't.

15            MR. RIOPELLE:  If I --

16            THE COURT:  Nobody ever has a wedding date in mind.

17            MR. RIOPELLE:  I know what mine was so that's all I'm
18   really charged with knowing but I know it is around that time.
19   If I am not able to attend I will have Mr. Talkin or one of the
20   other defendants stand up for me.

21            THE COURT:  Let's say we are going to do it sometime,
22   does anybody have a problem if we find a day in the week in the
23   14th of June?

24            MR. MORAK:  No objection, your Honor, for Roche.

25            MS. ABATE:  For Ms. Abate that's fine.

1            MR. BANKS:  For Mr. Hill no objection, your Honor.

2            THE COURT:  If I hear deafening silence I will assume
3    there is no objection.  I hear deafening silence.  Okay,
4    Mr. O'Neill, you pick a date.

5            THE DEPUTY CLERK:  17th, Judge.

6            THE COURT:  The 17th of June, 2:00 p.m.  I just signed
7    another CARES Act extension order that will be effective on
8    March 24th so this will probably still be a Skype conference.
9    Who knows.  I hope that it will be the last one but let's
10   schedule it for that and let's see what's going on.  Things
11   change by the week these days.

12           THE DEPUTY CLERK:  I will send you a Skype invitation
13   for June 17th at 2:00 p.m.

14           THE COURT:  Okay.  And time is excluded in the
15   interest of justice, I assume without objection.  Defendants
16   interest in a speedy trial being outweighed by the need for
17   defense counsel to continue to review what has turned out to be
18   voluminous discovery.

19           Did I hear someone say uh?  No, I didn't.  Okay.  I
20   want to thank you, all.  I know this is a pain in the neck to
21   try to organize these things and get everybody on but I really
22   appreciate it.  I will see you in three months and I hope that
23   in three months we can get this thing moving.

24           ALL COUNSEL:  Thank you, your Honor.

25           THE COURT:  Happy anniversary, Ms. Abate.

L3B5cahC

1         MS. ABATE:  Thank you, your Honor.

2         MR. MORAK:  Mine is next month, 35 for Morak.

3         MS. ABATE:  God bless, Glenn.  God bless.

4                       o0o