TALKIN, MUCCIGROSSO & ROBERTS, L.L.P.
ATTORNEYS AT LAW
40 EXCHANGE PLACE
18TH FLOOR
NEW YORK, NEW YORK 10005

(212) 482-0007 PHONE
(212) 482-1303 FAX
WWW.TALKINLAW.COM
EMAIL: INFO@TALKINLAW.COM

MARYLAND OFFICE:
5100 DORSEY HALL DRIVE
SUITE 100
ELLICOTT CITY, MD 21042

410-964-0300

NEW JERSEY OFFICE:
2500 PLAZA 5
HARBORSIDE FINANCIAL CENTER
JERSEY CITY, NJ 07311

201-342-6665

July 7, 2021

Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

BY ECF

        Re: <u>United States v. James Cahill</u>
          20 Cr. 521 (CM)

Dear Judge McMahon:

  As the Court is aware, defendant James Cahill ("Cahill") is currently at liberty on a fully secured $500,000 Appearance Bond that contains several conditions including home detention with location monitoring. By this letter, Cahill makes a second application to change the home detention condition of his bail to a curfew. Cahill does not seek to amend any other bail conditions including, importantly, electronic location monitoring. As to this application, Pretrial Services ("Pretrial"), by United States Pretrial Services Officer Andrew Abbott, states, "The defendant has been in compliance with his conditions of home detention and Pretrial would not object to him being placed on a curfew given his compliance thus far." The government continues to object.

  Cahill has been on bond since October 1, 2020. As confirmed above by Pretrial, he has dutifully abided by the many conditions of his release for the entire nine-month period of his release, including that he not conduct any business activities relating to unions and labor organizations related to this case and that he have no contact with his co-defendants. The Bail Reform Act directs the court to impose the ***least restrictive*** bail conditions ***necessary*** to protect the safety of the community and reasonably assure the defendant's appearance at trial. 18 U.S.C. § 3142(c)(1)(B). The government has never alleged that Cahill is a flight risk. As to dangerousness, the government must establish that Cahill presents a danger to others by clear and convincing evidence. *United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995)*. Through his actions over an extensive period of time, Cahill has demonstrated that he will comply with all the directives of this Court, that he does present a risk of danger to any individual or the community

and that the home detention condition is overly restrictive. The government, therefore, is unable to satisfy the burden of proof required to establish dangerousness,

In the government's opposition to Cahill's original motion, the only ascertainable articulation as to why home detention is necessary is that "Cahill has deep ties to leading members of organized crime who are known to engage in acts of violence and intimidation which poses a threat to potential witnesses in this case, especially where Cahill [is] able to go anywhere and meet anyone without any real ability by Pretrial Services to monitor his movements." DE 71, p.5. We will briefly address why each of the three aspects of this contention—Cahill's "deep ties to organized crime," the potential to intimidate witnesses, and the lack of monitoring— is wrong. First, the assertion that Cahill could travel unmonitored should home detention be waived is demonstrably incorrect. Because Cahill consents to the continuation of electronic location monitoring, not only is Pretrial in position to monitor his every movement, but these movements can also be readily documented. As noted above, Pretrial agrees that such monitoring with a curfew, and without home detention would be sufficient to execute their responsibilities.

Second, the unfounded contention that Cahill—who is seventy-two years old, has no criminal history, and has been charged with non-violent offense conduct—would somehow attempt to intimidate a witness is equally unavailing. The government offers nothing more than the generalization that since Cahill knows people with alleged organized crime ties, he is inclined to engage in witness intimidation. This baseless allegation, however, is directly contradicted by Cahill's actions since his release on bond. Even though the identity of the confidential source ("CS") is, by virtue of the nature of the government's investigation in this case, necessarily known to Cahill, the CS has not been intimidated or even contacted. Instead, Cahill has been fully compliant with all conditions of his release, including not contacting anyone involved in the case. Cahill's motivation for the curfew request is to increase his ability to care for his wife and to participate in the lives of his children and grandchildren as he advances in age. Risking those important concerns by engaging in the conduct suggested by the government is simply not in Cahill's best interest, nor is it consistent with Cahill's conduct thus far while out on bail or his conduct and character in his previous seven decades of life.

The government also failed to articulate to the Court how the more restrictive home detention condition prevents the improper contacts they speculatively surmise would occur under a curfew with electronic monitoring. None have occurred because Cahill has and will continue to abide by the fundamental condition that he abide the law, which satisfactorily addresses any perceived concerns for safety. Cahill wishes only to pursue a healthy lifestyle with his loved ones. The home confinement condition of release is more restrictive than that necessary to "reasonably . . . assure … the safety of any other person and the community," as contemplated by the bail statute. 18 USC § 3142(c). Preventing in-person meetings outside a home does not prevent contact. Were Cahill inclined to violate his conditions of bail, which he is not, there are myriad confidential and coded methods of communication available to anyone in this era of advanced technology. More traditional avenues such as telephone conversations or in-person meetings at his home could similarly be used. Home detention does not serve to prevent the above-described contacts with any greater efficacy than electronic monitoring with a curfew.

Third, in an attempt to support its unfounded claim that Cahill has "deep ties" to

organized crime, the government cites statements regarding the "Westies" and John Gotti. The Westies have been nonexistent for three decades and John Gotti has been deceased for two. The government also attempts to connect defendant to organized crime through one of his brothers and his brother in-law, deceased nine and eight years, respectively. Despite the efforts by the government to sensationalize these ancient references by Cahill, they were nothing more than stories, cherry picked from over fifty hours of recorded conversations, that included significant amounts of creative license and were regaled during long meals where, as the audio and video recording clearly establish, copious amounts of alcohol were consumed by all attendees, including the CS.

As to allegations of relationships with current alleged members of organized crime, none suggest that Cahill would encourage others to intimidate a witness. Cahill has not been charged with any crimes in referenced to these supposed organized crime figures or for any interactions with them. There is zero evidence of any witness tampering after nine months because none exists. Importantly, the government does provide a single example where Cahill was involved in or threatened any violent act or intimidation, either in this case or in any other. Nor do they provide any proof to support the logical leap that knowing or having alleged "ties" to any of these individuals would result in any threat of witnesses in the instant case.

For the above-stated reasons, Cahill respectfully submits that replacing the home detention condition with a curfew is reasonable and will result in his bond being subject to the "least restrictive" combination of conditions that will assure his appearance in court and the safety of the community as contemplated in 18 U.S.C §(C)(1)(b). Thank you for Your Honor's consideration of this application.

Thank you for Your Honor's consideration of this request.

Very truly yours,

*Sanford Talkin*
Sanford Talkin

cc:   AUSA Danielle Sassoon
      AUSA Jason Swergold
      AUSA Jun Xiang
      SAUSA Laura de Oliveira
      USPTO Andrew Abbott (by email)